Keating, J.
Joseph and Barbara Berlin were married on February 14,1954 in the State of Maryland. They resided there as husband and wife until September 30, 1960 when a decree of divorce was entered by a Maryland court. The divorce decree incorporated and confirmed a property and custody agreement made by the parties which awarded custody of the children of the marriage, Jonathan and Richard, to Barbara Berlin and granted visitation rights to Joseph.
The agreement provided that ‘ ‘ the wife has the privilege of removing the children from this area ’ ’. About six months after the decree was entered, Mrs. Berlin took the children, then 6 and 4 years of age respectively, to New York City where they have resided ever since.
Following the removal to New York, difficulties with regard to visitation rights of the father arose. Several orders were granted, at the behest of Mr. Berlin, by the Maryland courts adjudging Mrs. Berlin to be in contempt of court for interfering with the father’s visitation rights. On October 29, 1963, at the request of the father, the Maryland courts awarded custody of the children to him. The order awarding custody recited that a report had been filed by the Montgomery County Probation Department; that the mother had been adjudged in contempt of court and had failed to purge herself of the contempt; and that the best interest and welfare of the children would be served by awarding custody to the father.
Following the entry of this decree, the mother appeared in the Maryland proceeding and moved to vacate the decree on the *375 grounds that (1) the Maryland courts lacked jurisdiction over the subject matter, (2) that she was denied due process for lack of notice of the proceedings resulting in the change of custody, and (3) that .the lower court erred in changing the award of custody. All of these contentions were ultimately rejected by the Maryland Court of Appeals. (Berlin v. Berlin, 239 Md. 52.) The court noted, however, that ‘ ‘ the mother is not foreclosed from * * * reapplying for [the] custody [of the children] ” (p. 60).
Following the Maryland determination, several hearings were held in New York Supreme Court on an application by Mrs. Berlin for custody of the children. The proceeding had been commenced prior to Mrs. Berlin’s attempt to vacate the prior Maryland decree. The Supreme Court had issued a temporary order restraining Mr. Berlin from removing the children from this State pending its determination of the custody question.
At a hearing which was held on June 22, 1965, testimony was adduced, showing, among other things, that the children had lived all their lives with their mother, were now living and being cared for by their mother and their step-father, and that the only time the children had seen their father since December, 1962 was when he came to New York and, with the aid of two private detectives, tried forcibly to remove the children from the State.
On September 23, 1966, some three years after the Maryland courts had awarded custody to the father, Special Term awarded custody of the children to the mother, finding that the welfare and best interest of the children would be served thereby.
In addition, the court ordered the father to pay $2,500 to the mother for her counsel fees and to pay the mother $60 a week for the children’s support, such payments to start as of the date of the hearing in the New York Supreme Court. The court also held that the father’s right of visitation should be suspended until he demonstrated that he would not again try to remove the children forcibly from New York and enjoined him from removing the children from the State.
The Appellate Division affirmed the award of custody and the order requiring the father to pay $60 a week for the support of the children, retroactive to the date of the hearing; gave the father some additional time to pay the arrears; reversed the order for payment of counsel fees; and reversed the award sus *376 pending the father’s right to visitation and restored the rights he had under the original Maryland decree.
On this appeal the father argues that there is no proof in the record that the circumstances have so changed that the welfare of the children demands a change in the second custody decree and that in any event the Maryland decree is entitled to full faith and credit.
The arguments advanced by the appellant with regard to the award of custody to the mother are clearly without merit. Even if we were to assume — contrary to what we have already held (see Matter of Bachman v. Mejias, 1 N Y 2d 575) —that custody decrees are entitled to the same full faith and credit in this jurisdiction as in the rendering jurisdiction, the award below would have to be sustained.
It is clear from the opinion of the Maryland Court of Appeals in the very case at bar that the award of custody to the father was subject to modification upon a showing that a change in custody would serve the best interests of the children. This was the basis upon which the second Maryland custody decree, awarding custody to the appellant, was made and it is the precise reason for the action taken by Special Term in the case at bar. We cannot say, upon reviewing the record, that this decision was not supported by the evidence or that, in the three years since the prior Maryland decree was made, the circumstances have not altered sufficiently to justify an examination of the custody question.
Viewing the evidence most favorable to the husband, we have here a situation where both parties are fit to rear the children, although they unfortunately have been unable to subordinate their own conflicts to the welfare of their children. The boys, however, have been in the continuous custody of their mother since the couple’s divorce, almost 8 years. They have been attending school in New York and have no doubt established friendships here and adjusted to the difficulties which have been engendered by their parents’ marital difficulties. Moreover, in the years that have followed the Maryland custody decree, the children have barely seen their father. It cannot be said that a change in custody (required by adherence to the prior Maryland custody decree), which could have a disruptive effect on the lives of these young children, is in their best interests.
*377 There may he times when the courts of this State should be reluctant to exercise the discretionary power they have to modify an out-of-State decree (see, e.g., Matter of Lang v. Lang, 9 A D 2d 401, affd. 7 N Y 2d 1029). This is especially so where the child is brought into this State for the purpose of avoiding a custody decree recently made by a sister State court. Thus it has been said: ‘‘ It is especially desirable, from the point of view of the child’s welfare, that such litigation as this should not be subject to endless repetition. If the matter has been competently litigated, decrees of foreign courts should be given recognition. If the foreign proceedings have taken place in the state where the child habitually lives, not necessarily where it is technically domiciled, it would seem desirable that other state courts decline to use their power merely because of the temporary presence of the child. Upon a change in the child’s residence the decree at the former residence should be given full faith and credit, at least as to conditions existing at the time of its rendition, and the one asserting changed conditions should be compelled to show that they are such as to make him more, or another less, fit to have custody of the child.” (Stumberg, Conflict of Laws, [3d ed., 1963], p. 323.)
In the case at bar, however, the Maryland order upon which the husband relies was entered some three years prior to the decree in question by a State court whose only significant contact with the children in question was that the parties had chosen to litigate the custody issue there. “ A child is not a chattel ” (Matter of Bachman v. Mejias, supra, p. 582), however, and, in determining whether to refuse to exercise our discretion to modify a foreign decree such as this, the question should not be, as the appellant suggests, whether a parent is estopped by his participation in a foreign proceeding from relitigating the issue, but rather what, in fact, is in the best interest of the child. Moreover, as we noted earlier, even if res judicata effect were to be given to the Maryland decree, at least as to the facts found at the time, no one could seriously argue that, given the time which has elapsed since the prior decree was rendered, the age of these children and the fact that they never had actually been out of their mother’s custody, a New York court or, for that matter, a Maryland court should or would accept as binding the previous finding awarding custody to the father.
*378 Several other issues are raised by Mr. Berlin’s appeal as well as the cross appeal. The first and most significant one relates to the visitation rights of the father and the manner in which they are to be exercised. Special Term’s decision that the father’s visitation rights be suspended until he demonstrates that he would not attempt to remove the children from this jurisdiction was reversed by the Appellate Division. The court found that the only time the father had attempted to forcibly remove the children from this State was when he was acting pursuant to the Maryland custody order and that there was no basis for finding that he would now do so. The court, therefore, fixed the visitation rights as they had originally been agreed upon by the parties and incorporated into the divorce decree.
The cross appellant argues that there are not sufficient safeguards to guarantee the return of the children to New York in the event the father refuses to return the children and again invokes the jurisdiction of the Maryland courts.
We agree with the Appellate Division that Special Term erred in suspending the father’s visitation rights. On the other hand, we cannot agree with the court’s conclusion that no protective measures are required to insure the return of the children to New York. The very Maryland order, pursuant to which he attempted once to forcibly remove the children from this jurisdiction, is still in effect and, given the bitter emotions which this controversy has evoked, we believe that the case should be remanded for consideration of proper conditions to the exercise of the visitation rights contained in the agreement. Among the conditions which should be considered is the posting of a bond and a stipulation by the appellant to agree to a vacatur of the prior Maryland decree and any other measure the court in its discretion deems necessary. We would note that the suggested provisions urged by Mrs. Berlin, that the father’s visits with the children be limited to New York and then only in the presence of a third party, seem to be unduly harsh and should be adopted only if no other provision can be made to insure the father’s compliance with the orders of the court.
We have examined the remaining arguments raised on the appeal and cross appeal and find them to be without merit.
The order of the Appellate Division should be modified in accordance with the opinion herein and, as so modified, it should be affirmed, with costs to the petitioner.
*379 Chief Judge Fuld and Judges Van Voorhis, Burke, Scileppi, Bergan and Breitel concur.
Order, insofar as appealed from by petitioner-respondent-appellant, modified, with costs, and matter remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed. Order, insofar as appealed from by defendant-appellant-respondent, affirmed.