No. 12170

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

ROGER L. ROEBUCK,

Plaintiff and Appellant,

-vs-

CAROL L. ROEBUCK now CAROL L. BAILES,

Defendant and Respondent.

---

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

William Dee Morris argued, Helena, Montana

For Respondent:

Charles Smith argued, Helena, Montana

---

Submitted: March 1, 1973

Decided: APR 3 - 1973

Filed: APR 3 - 1973

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

The father of three minor children was awarded their custody following a divorce in the circuit court of Deschutes County, Oregon. The children lived with their father in Oregon pursuant to the Oregon decree, with minor modifications, for about three years. During a summer visitation with their mother in Montana pursuant to the Oregon decree, the mother sought modification in Montana of the Oregon Custody award based on changed circumstances. The district court of Lewis and Clark County, Montana, modified the Oregon decree, awarding exclusive custody of the three minor children to the mother and enjoining the father from interfering with her custody. The father appeals from this custody order of the Montana court.

The sole issue for review upon appeal is the jurisdiction of the Montana district court to modify the Oregon custody award.

Appellant is Roger L. Roebuck, the father of the three minor children whose custody is in dispute. Respondent is Carol L. Roebuck, now Carol L. Bailes, the mother. The three minor children are a girl now age 13, and two boys now ages 11 and 9.

The father and mother were married in Oregon in 1960. The three minor children were issue of this marriage. On July 31, 1968, the father and mother were divorced by decree of the circuit court of Deschutes County, Oregon. Under the terms of the divorce decree, the father was awarded custody of the three minor children with specified visitation rights in the mother. On July 31, 1970, the circuit court of Deschutes County, Oregon, modified the visitation rights granting the mother the right to have the children with her in Montana for a four week period each summer, but retaining custody in the father.

The mother remarried in 1969 and lives in Montana. On July 19, 1971, during the children's summer visitation with their mother in Montana pursuant to the terms of the Oregon custody award,

the mother filed a petition to modify the Oregon custody award in the district court of Lewis and Clark County, Montana. She sought to have the Oregon custody award to the father set aside and custody awarded to her, based on changed circumstances. On the same day the Montana district court issued a temporary custody order awarding exclusive custody to the mother pending hearing, and restraining the father from interfering with that custody pending hearing. A copy of the order and petition was personally served upon the father in Deschutes County, Oregon on July 28.

In the meantime before the hearing was held in the Montana district court on the mother's petition for modification, the father commenced contempt proceedings against the mother in the Oregon court for willful violation of the Oregon custody award requiring her to return the children to him in Oregon in July. These proceedings were commenced on August 11, but the mother could not be served although copies of the last Oregon custody award of July 1970, the father's affidavit alleging contempt by the mother, and the court's order setting the contempt charge for hearing were delivered to the mother's Montana attorney.

On September 7 the Oregon court held a hearing on the contempt charges against the mother at which she did not appear, but as shown above she had never been personally served. Nonetheless the Oregon court entered the mother's default in the contempt proceedings and proceeded to hold the hearing.

Following this hearing, the Oregon court issued a warrant of arrest for contempt against the mother and specifically made the following findings: (1) That the father maintains an exemplary home life and facilities for the care of the children, (2) that there exists no change in circumstances requiring modification of its custody orders, (3) that the temporary absence of the children from Oregon does not deprive the Oregon court of its jurisdiction over their custody, and (4) terminating its previous summer visitation order.

We note that these proceedings and orders of the Oregon court on September 7 were not in evidence before the Montana court when it held its hearing on the mother's petition for modification, but were furnished this Court at the time of oral argument of this appeal. However, we relate them here in the chronology of events leading to this appeal in the interests of completeness although we do not consider them germane to determination of this appeal.

On September 15, the district court of Lewis and Clark County, Montana held a hearing on the mother's petition for modification of the Oregon custody award. On September 21, the Honorable Gordon R. Bennett, district judge, entered findings of fact, conclusions of law, and a custody order. Briefly, he found that since the divorce and the last custody order of the Oregon court "there has been a substantial and material, if not drastic, change of conditions affecting the welfare and custody of said children, which change of conditions has been conclusively proved by the testimony of the father himself." Specific findings related to the failure of the father to provide two of the children with proper medical care exposing them "to grave danger and risk of serious and permanent physical harm and damage." Generally the findings encompassed the conclusion that the welfare of the children and their emotional, spiritual and physical development by reason of changed circumstances since the last Oregon custody award required a change in their custody from the father to the mother. The Montana court ordered: (1) That the Oregon decree be modified to place exclusive custody in the mother, (2) enjoined the father from interfering with the mother's custody, and (3) required the father to pay the mother $150 per month child support and maintenance.

The father now appeals from this custody order of the Montana district court. As heretofore stated, the sole issue on appeal is the jurisdiction of the Montana district court to enter this order.

The father mounts a three-pronged attack on the jurisdiction of the Montana district court, contending: (1) The Oregon court has exclusive jurisdiction over the custody of the children by virtue of its continuing jurisdiction as the court of original award and the Oregon domicile of the children. (2) The Montana court has no jurisdiction over the custody of the children as they are not domiciliaries of Montana and were physically present in Montana only temporarily under the terms of the Oregon decree. (3) The Montana court denied "full faith and credit" to the Oregon custody award by adjudicating the same issues as were previously adjudicated to the contrary by the Oregon court.

Directing our attention to the father's first contention, it is clear the Oregon court had continuing jurisdiction over the custody of the children both as the court of original award and as the court of the children's domicile. It is admitted that the Oregon court had jurisdiction in the first instance over the divorce proceeding and custody of the minor children of the marriage. The Oregon court possessed continuing jurisdiction to modify its original custody award by the express provisions of statute. ORS 107.135(1)(a), provides the court has the power to "Set aside, alter or modify so much of the decree as may provide * * * for the custody, support and welfare of the minor children * * *." Godfrey v. Godfrey, 228 Or. 228, 364 P.2d 620. Montana has a similar statute and recognizes such jurisdiction. Section 21-138, R.C.M. 1947; Corkill v. Cloninger, 153 Mont. 142, 454 P.2d 911; Brandner v. Brandner, 154 Mont. 373, 464 P.2d 508. The Oregon court likewise has the jurisdiction to determine the custody of minor children who, as here, are domiciled in Oregon. Allen v. Allen, 200 Or. 678, 268 P.2d 358.

However, the jurisdiction of the Oregon court in such cases is not necessarily exclusive. It is widely, if not universally, recognized that physical presence of a minor child within the borders of a state invests the courts of that state with jurisdiction to determine custody where the welfare of the child is

- 5 -

concerned. In re Clay, 96 Ariz. 160, 393 P.2d 257; Fenner v. Bassett, (Alaska 1966), 412 P.2d 318; Stout v. Pate, 120 C.A.2d 699, 261 P.2d 788; Heilman v. Heilman, 122 C.A.2d 771, 266 P.2d 148; Sampsell v. Superior Court, 32 C.2d 763, 197 P.2d 739; Eddy v. Staufer, 160 Fla. 944, 37 S.2d 417; Application of Anderson, 79 Ida. 68, 310 P.2d 783; Oleen v. Oleen, 15 Utah 2d 326, 392 P.2d 792. Under material facts identical to the instant case, the Texas Supreme Court found jurisdiction based on temporary presence of a minor child within the state. Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293.

The origin and fountainhead of such jurisdiction lies in the power of a state as parens patriae to protect the innocent and helpless found within its borders without regard to their legal domicile. Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 40 A.L.R. 937; In re Clay, supra; McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444, 160 A.L.R. 396; Starr v. Starr, 121 C.A.2d 633, 263 P.2d 675; Bassett v. Bassett, 56 N.M. 739, 250 P.2d 487, Anno. 4 ALR2d 41, § 24. Such jurisdiction exists notwithstanding a valid existing custody award by a court of a sister state. Goldsmith v. Salkey, supra; Bassett v. Bassett, supra; Stout v. Pate, supra; Heilman v. Heilman, supra; In re Lee's Guardianship, 123 C.A.2d 882, 267 P.2d 847; Sampsell v. Superior Court, supra; Oleen v. Oleen, supra.

While the foregoing authorities are not binding precedent in Montana, the basic rationale indicated in the two preceding paragraphs is persuasive. Under the circumstances of the instant case, such rationale is compelling. We hold therefore that where, as here, the circumstances of the case warrant the intervention of the state of Montana as parens patriae for the protection and welfare of minor children physically present within its borders, the jurisdiction of the Montana court cannot be denied solely by reason of an outstanding valid custody award by a court of the children's domicile.

The final issue is whether the Montana court denied "full faith and credit" to the Oregon custody award by adjudicating the same issues previously decided to the contrary by the Oregon court.

A brief review of the applicable law pertinent to this issue will furnish the necessary background for its determination. The United States Constitution requires that full faith and credit must be given by each state to the judicial proceedings of every other state. Art. IV, Sec. 1, United States Constitution. Supplementary legislation enacted by Congress provides in pertinent part:

> "Such * * * judicial proceedings * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken."
> Act of June 25, 1948, Ch. 646, 62 Stat. 947; 28 U.S.C.A. § 1738.

The essence of these requirements as they apply to subsequent custody orders by the court of a sister state is summarized in 24 Am Jur 2d, Divorce and Separation § 1000, p. 1140:

> "* * * The full faith and credit clause does not prevent other states from changing custody under the same circumstances. While the judgment of a divorce court concerning custody is res judicata of the issue as of the time of the adjudication, another state may make a new order where the circumstances have changed and the welfare of the child will be promoted by the modification.
>
> " * * * it is usually held that a new order for custody can be made in another state only where there has been a substantial change in circumstances since the entry of the decree. If the circumstances are unchanged, the foreign decree, if rendered by a court having jurisdiction to award custody, should be given full force and effect."

The Montana Supreme Court held to the same effect in Corkill v. Cloninger, 153 Mont. 142, 150, 454 P.2d 911:

> "Thus the courts of either state may possess jurisdiction to make a subsequent custody award, but such subsequent awards must be based on changed conditions affecting custody since entry of the existing valid custody award. In this manner, the constitutional requirement that full faith and credit be given to valid judgments and orders of the courts of a sister state is satisfied."

In the instant case, at the time of the hearing in the Montana court the Oregon custody order of July 1970 was the existing valid custody award. The purported findings and custody order of the Oregon court on September 7, 1971, in the contempt hearing was void as it exceeded the scope of the notice and issues of that hearing and no personal service was made on the mother. In any event, that hearing was limited to the issue of whether the mother was in contempt of court by reason of willful violation of the terms of the custody order of July 31, 1970. The issues of the fitness of the father for custody or changed circumstances since July 1970 were foreign to the notice of hearing on the issue of contempt properly before the Oregon court. As such the issues of fitness and changed circumstances were beyond the jurisdiction of the Oregon court to hear and determine in that proceeding, the determination of such issues was and is of no effect even in the state of Oregon. Accordingly, the determination of such issues is not entitled to any faith and credit in Montana.

Appellant's contention that the Montana court readjudicated the same issues previously decided by the Oregon court to the contrary is not borne out by the record. As we have no record of the testimony or the specific conditions affecting custody before the Oregon court, we must necessarily rely on such times and dates as were established in the evidence before the Montana court in determining whether a given condition predated or antedated the Oregon custody award. While such evidence discloses to some extent an overlap of conditions adversely affecting the children's welfare, both before and after the Oregon decree of July 31, 1970, it is manifest that these conditions had rapidly deteriorated subsequent to that date and had become acute, damaging, and demanded immediate attention at the time the Montana court assumed jurisdiction. Such circumstances constitute a substantial and material change in conditions affecting custody and the district court so found. Thus appellant's contention is contrary to the evidence.

What were the material changes in circumstances since the
Oregon custody award? It is unnecessary and inadvisable to detail
the facts as they stand largely undisputed and no issue is pre-
sented in this appeal concerning the sufficiency of the evidence
to support the findings. Suffice it to note that they concern
immediate and acute physical, medical, dental, educational and
emotional problems of the minor children directly related to the
father's care, custody and control. The findings of the Montana
court concerning substantial and material changes affecting the
welfare and custody of the children are not in issue in this
appeal and fully support the conclusion of law:

> "That the changed circumstances hereinabove
> mentioned render it essential that said minor
> children's custody, care and control be changed
> from the father to the mother and the best in-
> terests of said children and their welfare will
> be served thereby."

Both the findings and conclusions of the Montana district court
support its order changing custody to the mother.

Appellant principally relies on Carroll v. White, 151
Mont. 332, 443 P.2d 13, to sustain his contention that the
Montana court has no jurisdiction to determine custody in the
instant case. Carroll is entirely consistent with our holding
in the instant case, being distinguishable on both the facts
and the law. In Carroll, a mother domicled in Washington who
had custody of her two minor children, also domiciliaries of
Washington, under a Washington custody order permitted them to
visit their father, who was domiciled in Montana, for a month
during the summer. When the father did not return them to
Washington, the mother brought an action in a Montana district
court to have the children returned to her, relying on the
Washington decree for custody. The father counterclaimed on the
basis the mother had transferred their custody to him and had
consented to their remaining with him during the next school year.
The Montana district court found that no such agreement existed
and ordered the return of the children to their mother in Washing-
ton. On appeal we held that the Washington decree granting

custody to the mother was entitled to full faith and credit.

There was no issue before the Montana court concerning the mother's fitness for custody.  Subsequently in <u>Corkill</u>, we expressly indicated our disapproval of the rule denying jurisdiction to determine custody to any court outside the state of the child's then existing domicile, overruling Application of Enke, 129 Mont. 353, 287 P.2d 19, to the contrary.

<u>Carroll</u> is consistent with our ruling in the instant case.  There, as here, the court of a sister state had made a valid existing custody award concerning minor children domiciled in the sister state.  The custody award was res judicata of the issues as of the time of the adjudication and accordingly entitled to full faith and credit in Montana.  But in <u>Carroll</u>, unlike the instant case, there was no subsequent change in conditions and circumstances affecting custody and therefore no basis for the readjudication thereof by the Montana court.

For the foregoing reasons we hold that under the circumstances of the instant case, the Montana court had jurisdiction to readjudicate the custody of the minor children here involved.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justices

MR. JUSTICE JOHN CONWAY HARRISON dissenting:

I dissent.

_____
Associate Justice

- 10 -