Argued December 18, 1974, affirmed January 14, reconsideration
denied February 12, petition for review denied March 11, 1975

## BROOKS, *Appellant, v.* BROOKS
## (No. 83065), *Respondent.*

530 P2d 547

*R. Craig McMillin,* Salem, argued the cause for appellant. With him on the brief was D. Michael Mills, Salem.

*James W. Nass,* Marion-Polk Legal Aid Service, Inc., Salem, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

This is a habeas corpus proceeding brought by the plaintiff father to gain physical custody of his two minor sons presently in the custody of defendant mother.

Plaintiff appeals from a decree denying the writ and refusing to enforce a previous Montana modifica-

tion order giving custody to plaintiff. He makes two assignments of error:

(1) "The court erred in refusing to enforce the Montana modification order."

(2) "The court erred by modifying the Montana custody order without any showing of a change of circumstances subsequent to the making of the last custody decree."

The parties were married in Montana in 1963. In 1972 the wife instituted divorce proceedings in that state, and was granted an uncontested divorce. Under that decree the wife was awarded custody of the two minor children, with certain visitation and custodial rights reserved to the father.

Shortly after the above decree was entered, the parties began feuding. The father accused the mother of not living up to the terms of the visitation provision of the decree. The mother countered by accusing the father of similar irregularities, and of harassing her and the children outside the prescribed visitation times. Unable to cooperate, the parties then entered into a formal written stipulation regarding these rights. This did not, however, end the feuding.

In May 1973 the father moved to Idaho. The mother continued to reside with the children in Montana. In June 1973 the father gave notice of his intention to take the children for four weeks as provided in the decree and the stipulation. When he went to Montana to pick up the boys he was unable to locate them or the mother. His efforts to locate the children brought him to the Woodburn (Oregon) area, where his ex-wife had relatives. The father learned that the mother had been in Oregon, but had returned to Montana with the children. The father then returned to Mon-

tana and located the mother and children there. The mother refused to allow the four weeks' visitation. Shortly thereafter the mother secretly moved to Oregon with the children. (The Montana decree did not prohibit the mother from removing the children to another state, or require notice to Montana authorities or the father before doing so.) The mother gave no notice of her whereabouts to the father after the move to Oregon.

About the first of August 1973 the father initiated contempt proceedings against the mother in Montana. The mother could not be located for purposes of service. The father then initiated proceedings in Montana to modify the decree and grant to him the custody of his children. The mother still could not be located for purposes of service of process. Summons was thereupon published and a copy of the petition for modification and summons was sent to the mother's last known address. The mother learned of this proceeding through her relatives in Montana.

About the middle of November 1973 the father learned that one child was enrolled in school in Oregon. On December 7, 1973, the father appeared in Montana at the modification hearing; however the mother did not appear in person or by counsel, and her default was entered.[1] The father offered testimony on the petition for modification. Based upon this testimony the court overturned its previous decree and

[1] We note that under Montana law whenever a default judgment is entered following service of summons by publication, the court may permit defendant to answer the merits of the action "at any time within 180 days after rendition of any judgment in such action." Rule 60 (b), M R Civ P, Repl vol 7, Revised Codes of Montana 1947.

entered a new decree granting the father full custodial rights of the minor children.

On January 7, 1974, the father filed the instant application for a writ of habeas corpus in the Marion County Circuit Court. Hearing was held on March 27, 1974, both parties appearing and testifying. The mother testified as follows: That she had moved to Oregon because she felt the father had been harassing her and the children; that she preferred the Oregon courts to the Montana courts in matters of custody; that she had received a copy of the father's petition for modification and summons which had been sent to her by her mother in September 1973; that she also received a copy of the published summons from her sister; that upon receipt of the copy of the petition and summons she contacted an attorney in Oregon and was advised that there was a 75 per cent chance that the Montana court would not act on the petition; that she was advised to employ counsel in Montana; that she was financially unable either to return to Montana to contest the matter or to employ Montana counsel to represent her; that she was receiving public assistance in Oregon; and that she had no job in Oregon but did have brothers and sisters in Oregon.

The father testified that he had been employed, and had lived, in Oregon for a brief period while this case was pending in Marion County; that he was presently living in Spokane, Washington, and working in Idaho as the manager of a grocery store; and that if he were to gain custody of the children he had arranged with a young woman who was working at the same store to take care of the children while he was away at work.

The Marion County Circuit Court at a hearing on March 27, 1974, found the Montana modification order to be valid, but continued the matter for a further hearing on June 19 for the purpose of taking testimony relative to the present condition and best interests of the children. Pending this hearing the court gave temporary custody of the children to the mother and made provision for regular visitations by the father. Also, pursuant to stipulation of the parties, a social study by the family services division of the court was ordered.

Following the hearing on June 19, 1974, the court in a letter opinion held that inasmuch as the decision of the Montana court was without the benefit of necessary evidence concerning the actual circumstances of the mother and the children, it was subject to modification by the Oregon courts under the rules laid down in *Hawkins v. Hawkins,* 264 Or 221, 504 P2d 709 (1972); that the evidence showed that the mother was giving the children excellent care and that the children had made progress toward resolving emotional problems resulting from the long-continued friction between the parents concerning visitation; and that in the court's opinion the mother would provide the more stable environment and will better meet the needs of the children.

The main thrust of plaintiff's argument in support of his first assignment is that under the Uniform Child Custody Jurisdiction Act, which was enacted by our legislature during the 1973 legislative session (ORS 109.700 to 109.930), the Marion County Circuit Court was required to recognize and enforce the modification decree of the Montana court.

Section 13 of the Uniform Act is codified as ORS 109.830 and reads:

"The court of this state shall recognize and enforce an initial or modification decree by a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with ORS 109.700 to 109.930 or which was made under factual circumstances meeting the jurisdictional standards of ORS 109.700 to 109.930, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of ORS 109.700 to 109.930." (Oregon Laws 1973, ch 375, § 13.)

For the reasons which follow, it is our conclusion that the Marion County Circuit Court was not obliged by ORS 109.830 to recognize and enforce the modification decree of the Montana court. We also conclude that under § 14 of the above Act (ORS 109.840), the circuit court was authorized to modify that decree. ORS 109.840 provides:

"(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with ORS 109.700 to 109.930 or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.

"(2) If a court of this state is authorized under subsection (1) of this section and ORS 109.-780 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with ORS 109.920." (Oregon Laws 1973, ch 375, § 14.)

■■ Here, as in *Hawkins v. Hawkins,* supra, both

parents submitted themselves to the jurisdiction of the Oregon courts, and the children are physically present in Oregon. We are satisfied that our circuit court had jurisdiction in this case. As to the Montana modification order, from our examination of the record it appears that this order was made without any evidence as to the circumstances of the children, and solely on the basis of the nonresident father's allegations of interference by the mother with his legal rights of visitation and periodic custody.

Under these circumstances we conclude that the order was punitive, viz., to discipline the mother for alleged interference with the father's visitation rights, and was therefore subject to appropriate judicial inquiry and possible modification by another court in the state in which the children were physically present.

■ We now turn to the provisions of the Uniform Act relied upon by the father. ORS 109.830 requires recognition and enforcement of child custody decrees rendered in a sister state only when that state assumed jurisdiction under factual circumstances meeting the jurisdictional standards of the Act—which, in this case, means the jurisdictional standards set out in ORS 109.730.[2]

---

[2] ORS 109.730 provides:

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(b) It is in the best interest of the child that a court

First, since neither party was living in Montana at the time when the modification proceeding was initiated, ORS 109.730 (1)(a) is inapplicable.

Secondly, since there was no allegation of abandonment or neglect in the father's modification petition, it follows that ORS 109.730 (1)(c) would not apply.

ORS 109.730 (1)(b) contains a third test: significant connection of the parties with the first state. While both parties and the children had substantial previous contacts with Montana, these contacts had terminated, except for intermittent family contacts. The Montana court, therefore, was not, and is not, in the best position now to determine the present best

of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b) or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

"(2) Except under paragraphs (c) and (d) of subsection (1) of this section, physical presence in this state of the child or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

interests of the children and the fitness of the parents, both of whom had left Montana. It is significant that the Montana court made no findings as to (a) the present circumstances of the children or (b) the fitness of either parent.

The condition embodied in ORS 109.730 (1)(d) is likewise inapplicable because this state, where the mother and children were then living, was in the best position to inquire into the present circumstances of the children and to determine what was in their best interest.

The note of the Commissioners for Uniform Laws with reference to this section states:

> "The mandate of this section could cause problems if the prior decree is a punitive or disciplinary measure. See Ehrenzweig, Inter-state Recognition of Custody Decrees, 51 Mich.L.Rev. 345, 370 (1953). If, for example, a court grants custody to the mother and after 5 years' of continuous life with the mother the child is awarded to the father by the same court for the sole reason that the mother who had moved to another state upon remarriage had not lived up to the visitation requirements of the decree, courts in other states may be reluctant to recognize the changed decree. See Berlin v. Berlin, 21 N.Y.2d 371, 235 N.E.2d 109 (1967); and Stout v. Pate, 120 Cal.App.2d 699, 261 P.2d 788 (1953); Compare Moniz v. Moniz, 142 Cal.App.2d 527, 298 P.2d 710 (1956). * * *" 9 ULA, Child Custody Jurisdiction 120, 121, § 13 (1973).

Mention should also be made of the application of § 13 of the Act (ORS 109.830) which we have also previously set forth. The note of the Commissioners for Uniform Laws with reference to this section is in-

structive and for convenience is set forth in the margin.[9]

■ As to the father's second assignment, we conclude that it was unnecessary for the Oregon trial court to require a showing of a change of circumstances because the record fails to show that any evidence was ever submitted to the Montana court concerning the present circumstances and condition of the children, the fitness of either parent, or what the living arrangements would be to care for the children should

---

[9] "* * * In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. * * * If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. * * *

"For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6-1/2 months (3-1/2 months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the 'home state' of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law. See, Clark, Domestic Relations 322-23 (1968). * * *" 9 ULA, Child Custody Jurisdiction 122, § 14 (1973).

But see Roebuck v. Roebuck, 162 Mont 71, 508 P2d 1057 (1973), where the Supreme Court of Montana held that the Montana trial court had jurisdiction to modify an Oregon custody award, notwithstanding that the children were Oregon domiciliaries and were only temporarily visiting their mother in Montana pursuant to the original custody decree. The Montana court upheld, with one justice dissenting, the modification notwithstanding a prior determination by the Oregon circuit court, pursuant to a contempt proceeding, that there had been no change in circumstances justifying a modification of custody.

custody be changed. Under both the terms of the Uniform Act already discussed and *Hawkins v. Hawkins,* 264 Or 221, 504 P2d 709 (1972), we believe the Oregon court was fully entitled, under the evidence and the record in the case, to determine the issue of custody. We conclude that the circuit court of Marion County did not err in refusing to enforce the Montana modification order and in modifying the Montana custody order.

From our examination of the entire record we are satisfied that the welfare of these children would be best served by allowing them to remain in the custody of the mother in Marion County, subject to reasonable visitation with their father as provided in the Marion County modification decree.

Testimony at the final hearing in the Marion County Circuit Court indicates that the father has been exercising the liberal visitation rights specified in the court's temporary order, and that the mother has not interfered. This cooperation should continue in the interest of all parties, especially the children. They have a right to the guidance and influence of both parents in shaping their personalities.

Affirmed.