Argued April 27, reversed and remanded with instructions June 1, reconsideration denied July 14, petition for review allowed August 3, 1976 See 276 Or 759, 556 P2d 962

In the Matter of the Dissolution of the Marriage of SETTLE, nka FULLER, *Respondent,*
*and*
SETTLE, *Appellant.*
(No. 418438, CA 5513)

In the Matter of the Application of James W. Settle for a writ of Habeas Corpus,
SETTLE, *Appellant,*
*v.*
SETTLE, nka FULLER, *Respondent.*
(No. 419978, CA 5513)

550 P2d 445

*Ira L. Gottlieb,* Portland, argued the cause and filed the brief for appellant.

*R. M. Atkinson,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

**THORNTON, J.**

The father appeals from the order of the circuit court which modified a 1974 Indiana dissolution decree by changing legal custody of the two children, ages 9 and 5, to the mother.

In December of 1973 the parties were living in Elkhart, Indiana. The mother filed a petition for dissolution of marriage and requested custody. The father filed a cross-petition and also requested custody. During the pendency of the proceedings the mother left Indiana with the children and came to Oregon where she and the children have since resided with Ross Fuller, whom she married in June of 1974. The mother did not testify at the dissolution proceeding.

The Indiana court proceeded on the father's cross-petition, allowed the mother's attorney to withdraw since she had left the jurisdiction, heard testimony from the father and three area residents who knew the parties, and awarded custody to the father, stating:

"* * * The court further finds that the petitioner herein, Shirley E. Settle, is now and has been consorting with and living with another man and that she has conducted herself in a manner that is not in the best interests and welfare of the 2 minor children of the parties and that she is now believed to be residing with said man and 2 minor children of the parties in the State of Oregon and that she is not a fit and proper person to have care and custody * * *."

The father made efforts to find the children in Oregon but was unsuccessful until June of 1975, when he learned the mother's address from a credit agency. He came to Oregon and filed a petition for habeas corpus seeking physical custody of the children. The mother then petitioned to register the Indiana decree and asked for modification changing custody to her. The two proceedings were consolidated for trial. The circuit court stated that being forced to choose between two evils, the mother should have custody since the children have been in her custody for some time.

The father contends that the circuit court should not have entertained the mother's action to modify the Indiana decree, but instead should have deferred to the Indiana court which originally awarded custody to him. He argues that the Uniform Child Custody Jurisdiction Act, ORS 109.700 to 109.930, requires that the circuit court not exercise its jurisdiction under these facts.

The mother argues that the Indiana decree was punitive, in that it awarded the father custody not because he was a fit custodial parent and she was unfit, but because she showed disrespect for the courts of Indiana by leaving the state with the children. She contends that the Indiana decree was not a complete adjudication of the rights of the parties and should be ignored by the Oregon courts. *See, Brooks v. Brooks,* 20 Or App 43, 530 P2d 547, Sup Ct *review denied* (1975).

■ We conclude the decree was not punitive in the narrow sense necessary before a court of this state will ignore a sister state's decree. Contrary to the mother's contention and *Brooks* upon which she relies, the acts of misconduct noted in the Indiana decree relate directly to her fitness to have custody.

■ A foreign decree is punitive only if it is clear that the court awarded or changed custody simply because it was insulted by one parent disregarding its authority. Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand L Rev 1207, 1238 (1969); *Berlin v. Berlin,* 239 Md 52, 210 A2d 380 (1965); *Matter of Berlin v. Berlin,* 21 NY2d 371, 288 NYS2d 44, 235 NE2d 109 (1967), *modified* 28 App Div2d 877, 281 NYS2d 663, *cert denied* 393 US 840 (1968). *Brooks* involved a typical punitive decree. The parties were divorced in Montana and custody was given to the mother with the father being allowed visitation. The mother left Montana with the children and came to Oregon. She refused to allow the father to visit

the children; so he requested the Montana court to modify the decree changing custody to him. The Montana court granted his request presumably out of frustration over the mother's defiance of its decree. In this and similar situations, the modification is punitive and not entitled to recognition in other states. The original decree here was not punitive in this sense.

■ Likewise, the mother's contention that the Indiana decree was not a full adjudication of the custody issue cannot be sustained. At the dissolution proceeding the father and three persons familiar with the parties testified. Two of those who testified were a married couple who had allowed the wife, the children and Mr. Fuller to stay with them while they were traveling around the country living a nomadic life. That most witnesses were not heard is largely attributable to the fact that the mother had voluntarily left the state during the proceedings.

The father argues that under ORS 109.780(2), which is the Uniform Act's codification of the "clean hands rule," the circuit court should have declined to exercise its jurisdiction in this situation where one parent unilaterally removed the children from the state of the original decree and the other remained in that state. That section provides in relevant part:

> "* * * If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jursidiction if this is just and proper under the circumstances."

The father refers to the Commissioners' Note following § 14 of the Uniform Act (9 ULA 122 (1973)), ORS 109.840(1), and an example there which specifies the action a court should take in a factual situation nearly identical to the one before us. That example provides that if the father has been awarded custody and continues to live in the state of the original decree, state 1, and that if the mother abducts the children to state 2, the mother should be denied access to the courts of that state under § 8(b) of the Uniform Act,

ORS 109.780(2). Further, that the court in state 1 retains jurisdiction to modify its decree under § 3(a) (4) of the Uniform Act, ORS 109.730(1)(d), which provides for jurisdiction in state 1 where state 2, here Oregon, declines to exercise its jurisdiction under § 8(b) of the Uniform Act, ORS 109.780(2).

■ We are of the opinion that the mother's failure to return the children to the father as required by the Indiana decree amounts to a violation of that state's custody decree and, further, that this violation, when coupled with the mother's secreting the children in Oregon, makes this a proper case for the courts of Oregon to decline to exercise their jurisdiction under ORS 109.780(2).

Although the acts of the mother here do not constitute kidnapping, where one parent has taken a child away from a foreign jurisdiction during the pendency of dissolution proceedings there, that parent should not find the courts of Oregon waiting with open arms to give judicial sanction to such actions. One of the stated purposes of the Uniform Act, ORS 109.720(1)(e), is to "* * * [d]eter abductions and other unilateral removals of children undertaken to obtain custody awards."

■ Along somewhat the same lines, the Act is intended to encourage cooperation between courts of different states, to discourage continuing controversies over the custody of children, and to avoid relitigation of custody decisions of other states, ORS 109.720(1)(b), (d), (f). In light of these purposes, we are of the opinion that the courts of Oregon should refuse to exercise their jurisdiction in situations such as the one before us.

Having concluded that the circuit court should not have exercised its jurisdiction to modify the Indiana decree, we reverse and remand for entry of a decree consistent with this opinion.

Reversed and remanded with instructions. No costs to either party.