Fuchsberg, J.
(dissenting). The majority does not dispute either the settled proposition that the physical presence of the children was sufficient to confer jurisdiction upon our courts (e.g., Matter of Hicks v Bridges, 2 AD2d 335, 339; cf. Matter of Berlin v Berlin, 21 NY2d 371, cert den 393 US 840) nor that the Florida decree, while entitled to great weight, is subordinate to the best interests of the children — the issue of "para *743 mount concern” (Matter of Nehra v Uhlar, 43 NY2d 242, 250). Instead, in what smacks of an implicit and unwarranted obeisance to forum non conveniens and comity principles, its decision jeopardizes the children’s best interests.
The pertinent facts, not seriously disputed, speak for themselves:
Petitioner, a full professor, at whose current post at New York University he has been engaged since about 1962, married the respondent in 1969. Two children, currently ages seven and eight, were born of the marriage. In December, 1970, shortly after the birth of the second child, respondent abandoned her husband and set up a residence in Clearwater, Florida. Her departure eventually led to a divorce, prior to which the parties entered into a separate agreement in which they agreed that the children, who were then still close to the baby stage, were to be in the custody of the mother with visitation rights for the father. This provision was incorporated in the final degree in 1972.
In December, 1974, the father requested that the children come to visit him for the Christmas holidays. The respondent then sent them to New York willingly, although it is claimed that an oral agreement to return them in January was violated when the petitioner kept the children in Washington, D.C., and in New Jersey until they were returned to Florida in June, 1975. The children next came to New York in November, 1975, once again voluntarily. It was on that occasion that the petitioner commenced this action seeking custody. Thus, at no time prior to this custody proceeding had the father removed the children from their Florida domicile.[1]
In the intervening time, many troubling things about the wife’s life-style, whose nature was such that it was bound to have a most pernicious effect upon the children, had come to the father’s attention. We can no more ignore that now than he did then. Certainly that his marriage to the respondent nine years ago was preceded by the unorthodox relationship under which they previously had lived together did not re *744 quire him to abdicate his concern as a father these many years later. And the majority’s gratuitous characterization of him as a "nomad” simply because his work as a consultant in his field would at times take him out of town hardly changes the graphic picture of the mother image in this case.
As the petition describes in detail, at one point the mother was evicted from her apartment because of her wholesale practice of entertaining male visitors, most of whom were transients or drug addicts. The eviction brought no metamorphosis; additional affairs with at least 10 different men, each identified in the record by name, are reported. According to a neighbor, respondent admitted sleeping in the same bed as her "boyfriends” and her children in order to help them become "sexually uninhibited”. She has been linked to the sale of marihuana and introduced its use to the children. On one occasion, her house was included in a successful police "raid” for drugs. On another, a complaint was filed against her after the police had been called to her locked car, where the children, then three and one-half and one and one-half, had become hysterical while she was sojourning at a bar. Her denial of only some of these incidents — and that by affidavit only, though she did not hesitate to come to New York on other occasions — covers but some of the tiles in this unhappy mosaic.
Thus, it is difficult to imagine, in the context of a still viable and ongoing custodial relationship, circumstances more clearly adverse to the best interests of formative children. If ever great weight is to be afforded that consideration in determining whether to exercise jurisdiction, this case demands it. For, "not acceptable as simply an 'alternative lifestyle’ which people in an open society are entitled to follow, and courts are required to adopt as appropriate for the rearing of a little child” is the life-style allegedly led by the mother of the children with whom we are here concerned (Matter of Ray A. M., 37 NY2d 619, 624).
It is not surprising then that Special Term, after holding the factual hearing[2] which in its discretion the Appellate Division understandably believed was urgently required in the interests of the children (cf. Matter of Ray A. M., supra; Bunim v Bunim, 298 NY 391), found that in this instance the *745 mother’s "conduct apparently is one in which she has lived a life which appears not to be a proper one for the bringing up of children of tender and adolescent age * * * [I]t would not be in the best interests of the children to remain in the custody of the respondent.”[3]
Especially under these circumstances, I perceive no basis for overturning the Appellate Division’s order on the ground that our courts should have declined to exercise jurisdiction in the first instance. Indeed, in Irrigation & Ind. Dev. Corp. v Indag S. A. (37 NY2d 522, 525), we noted that it is our established policy not to "interfere with the Appellate Division’s exercise of discretion in granting or denying a motion to dismiss on the ground of forum non conveniens unless there has been an abuse of discretion as a matter of law or unless the Appellate Division, in exercising that discretion, has failed to take into account all the various factors entitled to consideration”. We "do not substitute our evaluation of the weight to be attached to such factors, singly or in combination, for that of the lower courts” (Hadjioannou v Avramides, 40 NY2d 929, 931).
If such a discretion is not to be lightly interfered with in a commercial context, how much more important is it that it not be disregarded where the stakes are the best interest of young children? In particular, the relegation of the New York-domiciled husband to a custody suit in Florida in the factual .and legal posture of this case is an interference with discretion in which I do not believe we should engage.
Indeed, the welfare of infants "transcends the rule of comity” as well (Matter of Bachman v Mejias (1 NY2d 575, 581). Therefore, it matters not that the majority apparently expects the result in Florida to be consistent with that of Special Term. The vagaries and cost of duplicative litigation 1,500 miles away are not inconsequential. Most important, to shuttle the children, who have now been in the care of the father for a considerable time, back to the mother and the milieu in which she has chosen to live, could not be less desirable (Matter of Ebert v Ebert, 38 NY2d 700, 703).
The point is that, under whatever rubric may be brought to bear — be it comity, forum non conveniens or other — the particular mix of factual and legal considerations in this case makes it an especially inappropriate one in which to substi *746 tute our judgment as to whether jurisdiction should be accepted for that of the Appellate Division of our court of general jurisdiction.
In short, unless we are to subscribe to the proposition that a determination as to whether the courts of this State should retain jurisdiction of custody matters must be made without any factual inquiry beyond the papers presented, the judgment and the order of the Appellate Division brought up for review should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur in Per Curiam opinion; Judge Fuchsberg dissents and votes to affirm in a separate opinion.
Judgment reversed, etc.

. The majority’s statement that the petitioner "abducted” the children in 1976 by having them flown to New York ignores the fact that, by that time, though its judgment had not been formally entered, the Supreme Court had filed its opinion awarding custody to the father. Moreover, since the order of the Appellate Division which had found that New York had jurisdiction preceded that event, it should not now be considered as a basis for a reversal (see Cohen and Karger, Powers of the New York Court of Appeals, § 73, p 315, n 21).

. Though this hearing took place subsequent to the entry of the Appellate Division order from which the wife appeals, we are not required to ignore it (cf. Cohen and Karger, Powers of the New York Court of Appeals, § 168, p 640).

. By choosing to appeal under CPLR 5601 (subd [d]) respondent waived appellate review of these findings (see, e.g., Matter of Farber v U. S. Trucking Corp., 26 NY2d 44, 55).