Argued and submitted September 15, 1981, order denying
motion to vacate custody provisions reversed and remanded;
appeal dismissed March 8, reconsideration denied April 13,
petition for review denied May 25, 1982 (293 Or 190)

STATE ex rel STATE OF
PENNSYLVANIA et al,
*Appellants,*

*v.*

STORK,
*Respondent.*

In the Matter of the Marriage of
STORK,
*Respondent,*

*and*

STORK,
*Appellant.*

(No. R 80-01-60436, D-7907-65293, CA A20396)

641 P2d 660

Dale W. Conn, Senior Deputy District Attorney, Portland, argued the cause for appellant. With him on the brief was Michael D. Schrunk, District Attorney, Portland.

Walter W. Yeager, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In these consolidated cases, wife appeals trial court orders denying her motion to vacate the custody provisions of an Oregon dissolution decree and finding that husband has no present duty to support his children who are in wife's physical custody in Pennsylvania. The issues are (1) whether the Oregon court had jurisdiction to award legal custody of the children to husband, and (2) whether husband has any present duty to support his children.

The parties were married in Pennsylvania in 1971, and their children were born there in 1972 and 1974. The family resided in Pennsylvania until September, 1978, when husband came to Oregon. On February 10, 1979, husband brought the children to Oregon with wife's consent.[1] He filed for dissolution of the marriage in July, 1979, in Oregon, and asked for custody of the children.

Personal service was made on wife in Pennsylvania. She evidently received erroneous advice from her lawyer that it was too late for her to appear in the dissolution proceeding. Instead of contesting husband's custody claim, she came to Oregon in September, 1979, surreptitiously picked up the children and returned with them to Pennsylvania, where, in November, 1979, she filed this petition for child support under the Uniform Reciprocal Enforcement of Support Act (ORS ch 110). In December, 1979, the Oregon dissolution decree was entered.[2]

---

[1] Wife claimed that the children were to stay with husband only temporarily until she became settled in Pennsylvania after moving out of her parent's house. The trial court found that it was the intent of the parties that the children would remain in Oregon for an "indefinite and lengthy period of time."

[2] The entire hearing was as follows:

"BY MR. YEAGER:

"Q. Your name is Michael Phillip Stork; is that correct?

"A. Yes.

"Q. You are the petitioner in this case?

"A. Yes.

"Q. There is no other, to your knowledge, petitions or anything before any court regarding this dissolution; is that correct?

"A. No — yes.

■ Wife here attacks that decree on the ground that the dissolution court lacked jurisdiction to award custody of the children to husband. When a court rendering a decree acts without subject matter jurisdiction, the decree is void and may be collaterally attacked. *Garner v. Garner,* 182 Or 549, 189 P2d 397 (1948); *Wood v. White,* 28 Or App 175, 558 P2d 1289 (1977).

In determining whether the Oregon court had jurisdiction to award custody of the children to husband, we are presented with arguably conflicting statutes. ORS 107.105(1)(a)[3] provides that when a court grants a dissolution decree, it has "power" to award child custody.

---

"Q. And is it true that irreconcilable differences between you and your wife have caused an irremediable breakdown of your marriage? Is that correct?

"A. Yes.

"Q. And you have two children born as issue of this marriage; is that correct, Mr. Stork?

"A. Yes.

"Q. And you originally had custody of those children?

"A. Yes.

"Q. What has happened to them since that time?

"A. They have been kidnapped and taken back.

"Q. Your wife came out and asked you for visitation and took the children back?

"A. She didn't ask for visitation; she just took the children.

"Q. Was that the way it was, they were taken from school? Is that correct?

"A. Away from the house.

"Q. You are asking now for custody of those children?

"A. Yes.

"Q. And you are asking that dissolution of your marriage be granted; is that correct?

"A. Yes.

"MR. YEAGER: That is all we have, your Honor.

"THE COURT: The marriage will be dissolved. The custody of the children will be in the petitioner."

[3] ORS 107.105(1)(a) provides:

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

However, the Uniform Child Custody Jurisdiction Act (Act), ORS 109.700 to 109.930, enacted in 1973, imposes additional conditions on jurisdiction to award custody. ORS 109.730 reads in relevant part:

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"* * * * *

"(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b) or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction."

"Home state" as used in ORS 109.730(1)(a), is defined as:

"* * * the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." ORS 109.710(5).

"(a) For the future care and custody, by one party or jointly, of all minor children of the parties born, adopted or conceived during the marriage, and for minor children born to the parties prior to the marriage, and for the visitation rights of the parent or parents not having custody of such children as it may deem just and proper.

■ Husband contends that the jurisdictional requirement of the Act applies only to modification of existing decrees. We disagree. The Act applies to both an initial decree, which is defined as "the first custody decree concerning a particular child," ORS 109.710(6), and to a modification of a decree, which is defined as "a custody decree which modifies or replaces a prior decree." ORS 109.710(7).

ORS 109.770(6) provides that:

"The court may decline to exercise its jurisdiction under [the Act] if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding."

The Commissioners' Note to § 3(a)(2) of the Act (ORS 109.730(1)(b)) states that:

"[The purpose of ORS 109.730(1)(b)] is to limit jurisdiction rather than to proliferate it. The first clause of [ORS 109.730(1)(b)] is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction. * * *." Unif. Child Custody Jurisdiction Act § 3, 9 U.L.A. 124 (1968).

Despite the apparent inconsistency between ORS chapters 107 and 109, it seems clear that the legislature intended that the jurisdictional requirements of chapter 109 supplement those of chapter 107. We therefore conclude that, while a court may appear to have the "power," *i.e.,* jurisdiction, to award custody under ORS 107.105(1)(a), it may still lack "jurisdiction" under ORS 109.730 to do so. Where that occurs, the special provisions of chapter 109 will control over chapter 107.

■ Under the Act the dissolution court must go through a multi-step analysis. Initially, it must ascertain whether it has jurisdiction under ORS 109.730. *Smith v. Smith,* 40 Or App 257, 259, 594 P2d 1292 (1979); *Carson v. Carson,* 29 Or App 861, 865, 565 P2d 763 (1977), *aff'd* 282

Or 469, 579 P2d 846 (1978). If it has jurisdiction, then it must determine whether it will exercise that jurisdiction. If it will, then it must make an inquiry into what is in the best interests of the children. *Dowhanik v. Dowhanik,* 43 Or App 379, 602 P2d 1127 (1979).

Our problem in determining whether the dissolution court here had custody jurisdiction is the inadequacy of the record. ORS 109.790 requires that the facts upon which a court makes its determination of jurisdiction must be included in the petitioner's initial pleading.[4] Here they were not. This defect was not cured by the presentation of any jurisdictional facts at the hearing; none were presented. For example, the dissolution court failed to inquire about when or under what circumstances the children left Oregon with their mother in September, 1979, and thus it had no way to know if the children had resided in Oregon for six months prior to commencement of the suit.

■ ■ Petitioner bore the burden of showing jurisdiction. The determination of whether custody jurisdiction exists is a "vitally important preliminary decision," *Moore v. Moore,*

---

[4] ORS 109.790 reads:

"(1) Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during the period. In this pleading or affidavit every party shall further declare under oath whether:

"(a) He has participated, as a party, witness or in any other capacity, in any other litigation concerning the custody of the same child in this or any other state;

"(b) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and

"(c) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.

"(2) If the declaration as to any of the above items is in the affirmative, the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.

"(3) Each party has a continuing duty to inform the court of any custody proceedings concerning the child in this or any other state of which he obtained information during this proceeding."

24 Or App 673, 681, 546 P2d 1104 (1976), because only if the child has significant contacts with this state will the court be able to carry out the statutory command to "give primary consideration to the best interests and welfare of the child" when it makes a custody determination. ORS 107.137(1). Here, the dissolution court abandoned this duty when it awarded custody merely as an incident of a default decree. The Supreme Court has stated that:

"* * * the best interests of the children require that at some time a [custody] determination be made upon all relevant facts without respect to prior parental disregard of court proceedings * * *." *Settle and Settle,* 276 Or 759, 770, 556 P2d 962 (1976), *overruled on other grounds, Grubs v. Ross,* 291 Or 263, 281, 630 P2d 353 (1981).

In *Brooks v. Brooks,* 20 Or App 43, 50, 530 P2d 547, *rev den* (1975), we stated that a custody decree made solely on the basis of allegations of interference by a defaulting party was punitive and "subject to appropriate judicial inquiry." In affirming the trial court's refusal to recognize and enforce a Montana decree, we also found:

"It is significant that the Montana court made no findings as to (a) the present circumstances of the children or (b) the fitness of either parent." 20 Or App at 52.

*See also Dowhanik v. Dowhanik, supra.*

If this were a direct appeal from the original decree, we would reverse and remand for further findings on custody jurisdiction. We think it doubtful that, should father attempt to enforce the Oregon decree in Pennsylvania, that state would honor it. *See Haynes v. Willock,* ___ Pa Super Ct ___, 431 A2d 341 (1981). Thus, it is likely that a new custody hearing will be held, whatever our decision here.

■ We conclude that the absence of the required jurisdictional pleading, combined with the failure of the dissolution court to address the jurisdictional question, deprived that court of jurisdiction to award custody of the children to husband. The jurisdictional defect could not be cured by a later finding that the children in fact did have some significant contact with this state at the time of the decree. Because of the importance of the jurisdictional question to the substantive decision to be made, we refuse to make any presumptions in favor of

jurisdiction.[5] We hold that the custody portion of the dissolution decree is therefore void, and mother's motion to vacate it should have been granted.

On remand, the trial court shall hold a hearing to determine if it now has jurisdiction to make a custody determination. If the trial court decides it has jurisdiction and that Oregon is not an inconvenient forum, ORS 109.770, it shall make the custody determination as if granting an initial decree.

■ The trial court's order, dated March 27, 1981, provided:

"* * * that defendant has no present legal obligation to pay child support and plaintiff's motion requesting the court, on rehearing, to reverse its finding that 'defendant had no present legal obligation to pay child support' and to reinstate the reciprocal proceedings is, with the exception as set out hereinbelow, denied.

"* * * the above-entitled reciprocal support proceedings * * * are continued for a period of ninety (90) days from the date of this order.

"* * * that if the defendant proceeds in the State of Pennsylvania for registration and enforcement of the Oregon divorce decree, the District Attorney may file a motion for temporary support, for the period of time that it will take the Pennsylvania courts to determine whether they will give full faith and credit to the Oregon decree.

"* * * that if the defendant does not proceed immediately to seek his remedies under the Oregon decree in the State of Pennsylvania, the District Attorney may proceed with the Uniform Reciprocal Support proceedings on behalf of the physical custodian of the children, the plaintiff herein.

---

[5] Although we doubt that a five-month period of residence could produce the degree of contact and availability of evidence contemplated by ORS 109.730(1)(b) for the assumption of jurisdiction under that statute, we lack the information to say affirmatively that it did not, or that the court could not have had jurisdiction under ORS 109.730(1)(d).

The trial court case found that the children were close to their stepmother, that they were enrolled in a day care school, that they were "well-settled" in Oregon and that "preparations were being made by the father and his live-in friend to provide a home for the children." The trial court evidently concluded, based on this later finding, that the dissolution court had custody jurisdiction under ORS 109.730(1)(b), although it did not say so.

"* * * that $100.00 per month per child, as agreed by the parties is a reasonable amount to be set for support in any proceeding under the two orders set out immediately hereinabove."

The order is not a final order; therefore, it is not appealable.

The order denying wife's motion to vacate the custody provisions of the Oregon dissolution decree is reversed and remanded for further proceedings. Wife's appeal from the order finding that husband has no legal obligation to pay child support is dismissed. No costs to either party.