Argued and submitted October 8, resubmitted en banc December 5, 2001, reversed and remanded in part; otherwise affirmed February 20, 2002

In the Matter of the Marriage of

David MEDILL,
*Appellant,*
*and*

Elvira MEDILL,
*Respondent.*

DR 98-04-163; A112620

40 P3d 1087

John S. Marandas argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Brewer and Schuman, Judges.

BREWER, J.

Edmonds, J., dissenting.

## BREWER, J.

Father appeals from the trial court's dismissal, for lack of subject matter jurisdiction, of father's motions to modify the child custody and parenting plan provisions of a dissolution judgment; to terminate, modify, or suspend his child support obligation; and to hold mother in contempt of court for violating the parenting plan. Father also assigns error to the entry of an order denying his motion to set aside the order of dismissal.[1] Father contends that the court had subject-matter jurisdiction over the initial child custody determination under the Uniform Child Custody Jurisdiction Act (UCCJA), *former* ORS 109.700 to ORS 109.930, *repealed by* Or Laws 1999, ch 649, § 55, and that it had authority to modify that determination under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), ORS 109.701 to ORS 109.834 (1999).[2] In addition, father contends that the court had jurisdiction to terminate, modify, or suspend his child support obligation, and to enforce the parenting plan by contempt proceedings. We reverse and remand in part; otherwise, we affirm.

While serving in the United States military, father met and married mother in Denmark in 1985. The parties lived in Germany after their marriage until 1997. Their two children were born in Germany in 1986 and 1988, respectively. Father moved to Oregon in the fall of 1997, expecting that mother and the children would move to Oregon. Mother later informed father that she and the children would remain in Germany. The parties agreed that father would file a dissolution action in Oregon. In May 1998, the Clackamas County Circuit Court entered, with mother's consent, a dissolution judgment that included a parenting plan. The parenting plan called for joint custody of the children, with mother retaining physical custody, and it awarded father

---

[1] Mother has not appeared on appeal.

[2] Effective October 23, 1999, the UCCJA was repealed and the UCCJEA was enacted in its place. Or Laws 1999, ch 649. As necessary, we will refer to the applicable provisions of each act in analyzing father's arguments. References to the UCCJA are to the 1997 version of the Act, and references to the UCCJEA are to the 1999 version of that Act. Unless otherwise noted, statutory references are to the 1999 version of the ORS.

parenting time with the children during any school vacation period lasting at least two weeks.

In July 1998, the children traveled to Oregon to visit father. Based on information he obtained from the children during the visit, father obtained a temporary protective order that prevented the children from returning to Germany as scheduled. Mother came to Oregon to contest the protective order. After a hearing, the trial court vacated the order in September 1998, and the children returned to Germany with mother. The vacating order specified the timing and frequency of telephonic access between father and the children, reaffirmed father's rights to parenting time with the children, and provided that the court should be notified of any further parenting time violations by mother.

In December 1998, father filed a contempt proceeding against mother, alleging that she had repeatedly violated the parenting plan. In April 1999, the trial court entered a judgment finding mother in contempt, sentencing her to one-year court probation, and modifying the parenting plan once more to clarify the terms of father's parenting time. Later in 1999, father sent a series of affidavits to the court, reporting additional alleged violations of the parenting plan by mother. In October 1999, mother initiated custody proceedings in a German family court, asserting that father had engaged in a bad-faith campaign to undermine her custody of the children throughout the previous court proceedings. In her pleadings, mother asserted—for the first time in any legal proceeding—that the German court had exclusive jurisdiction over custody and parenting plan issues regarding the children.

In December 1999, father initiated the current modification proceeding in the trial court. His third amended motion and order to show cause sought a change of custody or, alternatively, modification of the parenting plan, as well as modification or termination of his child support obligation, suspension of child support based on mother's interference with the parenting plan, a judgment of contempt based on mother's alleged violations of the parenting plan, and various sanctions for those violations. The trial court held a hearing on father's motion in August 2000. Mother did not appear. In November, the court entered an order dismissing father's

motions, holding *sua sponte* that it lacked subject-matter jurisdiction over them. The court's written findings focused on the custody determination:

"That [mother] has at all material times been, and remains, a citizen and resident of Germany;

"That the children of the parties have always been and remain residents of Germany;

"That [mother] submitted herself to the jurisdiction of the Court for purposes of dissolving her marriage to [father], though never present within Oregon;

"That thereafter [father] withheld the children from [mother] after a summer visitation forcing [mother] to travel to Oregon from Germany to secure the return of the children;

"That [mother] participated in those proceedings in Oregon which resulted in the Court finding [mother] in contempt for violating a Temporary Order of Restraint regarding [father's] phone contact with the children, and which returned custody of the children to [mother];

"That [mother] makes credible claims in her correspondence, and that of her German attorney, which may constitute a defense to this contempt proceeding;

"That the local German Youth Office has been involved in providing counseling and other services to [mother] and the children related to what [mother] claims are [father's] ongoing efforts to undermine [mother's] relationship with the children and engineer a change of custody;

"That all of the witnesses necessary to resolve the issues presented and fashion an appropriate judicial response, except [father], are residents of Germany;

"That there were pending at the time of the hearing date herein proceedings in the Bayreuth, Germany Family Court relating to these same general issues[.]"

From those findings, the trial court concluded that Oregon was not and never had been the children's home state for purposes of either the UCCJA or the UCCJEA and that the German family court was an available forum in which to

litigate the parties' ongoing dispute. The trial court also concluded that it lacked jurisdiction over the custody and parenting time issues raised by father and, therefore, lacked authority to enforce any order it might enter. On November 14, the court entered an order dismissing father's motion and order to show cause in its entirety.

Unknown to the trial court at that time, the German family court previously had entered an order declining to exercise jurisdiction over custody issues involving the parties' children. In its decision, the German court explained:

"In this connection, it is important to recognize that [mother] previously consented to the American Court's divorce decision, which also dealt with parental custody. The divorce decision's provision that [mother] would have the actual parental custody for the minor children and otherwise both parties would have joint legal custody with the caveat that [mother] has the sole right to determine the children's permanent place of residence, is a decision that could have also been reached under German law. It corresponds approximately to German law, which allows the parents joint custody and gives the mother the right to determine permanent residence. In this case, [mother] can, in accordance with [German law], exercise 'actual custody.'

"In view of the previous proceeding regarding parental custody in the USA and in view of the pending custody proceeding in the Oregon Circuit Court, which can be recognized under German law, the [German court] considers a custody decision to be impermissible."

After receiving a copy of the German court's decision on November 28, father filed a motion to set aside the trial court's order of dismissal. Father argued that the German court's failure to assert jurisdiction over the children freed the Oregon court to do so. On January 8, 2001, the trial court denied the motion to set aside the dismissal. In a written order, the court explained:

"The German Court's decision to defer to the Court here based on [father's] objection to jurisdiction, its determination that the proceeding here had been initiated prior to the proceeding there, and its mistaken belief that [mother] had petitioned this Court for a modification of judgment within this proceeding cannot create jurisdiction in this Court

where none exists by application of the governing statutes. The German Court's ruling was only that they should not proceed on the petition filed by [mother] over [father's] objections, not the converse."

The court determined that "Oregon never had jurisdiction to make an 'initial child custody determination.'" However, the court also concluded that, if Oregon had jurisdiction to make an initial child custody determination, "Oregon would have lost that jurisdiction pursuant to ORS 109.744(1)(a) by the time of this hearing." As noted, father appeals from the trial court's dismissal of his motion and order to show cause and its denial of his motion for reconsideration of the dismissal.

■        We first address father's contention that the trial court erred in concluding that it lacked jurisdiction to make the initial custody determination. Father urges that the trial court had jurisdiction under ORS 107.105, which provides, in part:

"(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it may further decree * * *:

"(a)   For the future care and custody * * * of all minor children * * *."

However, the trial court did not have jurisdiction over the custody determination under ORS chapter 107 if it lacked jurisdiction under the UCCJA, which was in effect at the time of the initial custody determination. *Mackie and Mackie*, 113 Or App 273, 277, 832 P2d 1240 (1992) (holding that a trial court must examine its jurisdiction under ORS 109.730 (1991) before making *any* child custody award in a situation where more than one state might exercise jurisdiction); *State ex rel Pennsylvania v. Stork*, 56 Or App 335, 340, 641 P2d 660, *rev den* 293 Or 190 (1982) (holding that the jurisdictional requirements of the UCCJA prevail over those in ORS chapter 107).[3]

---

[3] In *Chester and Chester*, 172 Or App 462, 466 n 4, 18 P3d 1111 (2001), we noted that neither this court nor the Supreme Court had "directly addressed" the issue of whether a trial court could exercise jurisdiction under the UCCJA when it had lost jurisdiction to modify a custody determination because of a pending appeal. *See* ORS 19.033(1) (1995). Father misunderstands our comment in *Chester* to mean that it is an open question whether ORS 109.730 (1997) provided the exclusive grant of jurisdiction over custody decisions where more than one state or nation

When the trial court made its initial custody determination, ORS 109.730 (1997) was the governing jurisdictional statute under the UCCJA.[4] It is undisputed that the children and mother, their physical custodian, have never resided in Oregon and that only father had any connection with this state when the initial custody determination was made. Accordingly, it is readily apparent that the trial court did not acquire jurisdiction to make an initial custody determination under ORS 109.730(1)(a), (b), or (c) (1997).

However, the court did have jurisdiction to make an initial custody determination under ORS 109.730(1)(d) (1997). That subsection applied because no other *state* had jurisdiction over the custody determination under ORS 109.730(1)(a), (b), or (c) (1997), and it was in the best interests of the children that Oregon assumed jurisdiction. Under the UCCJA, "state" meant "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." ORS 109.710(10) (1997). Because it

---

might exercise jurisdiction. That question *was* decided in *Mackie* and *Stork*, at least with respect to dissolution actions arising under ORS chapter 107. Although those decisions directly refute his contention, father has not cited them in his brief or argument on appeal.

[4] ORS 109.730 (1997) provided, in part:

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and the parents of the child, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b) or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction."

is a foreign nation, Germany was not "a state" within the meaning of the UCCJA. *Horiba and Horiba*, 151 Or App 489, 499-500, 950 P2d 340 (1997), *rev den* 326 Or 627 (1998). There is no evidence in the record that any other state, territory, or possession of the United States had jurisdiction over the initial child custody determination. Therefore, it is of no consequence, for purposes of ORS 109.730(1)(d) (1997), that the children resided in a foreign country when the initial custody determination was made. Likewise, it was in the best interests of the children for Oregon to assume jurisdiction over the custody determination at that time. Their parents agreed that Oregon should assume jurisdiction, and a custody determination by *some* court was required in order to provide the children with the stability of a predictable parenting plan. Because no German court had made a custody determination when the trial court made its initial determination, none of the policies of the UCCJA relating to the enforcement of foreign custody judgments was infringed by the trial court's assertion of jurisdiction. *See* ORS 109.720(3) (1997); *Dagan and Dagan*, 103 Or App 453, 455-57, 798 P2d 253 (1990) (construing ORS 109.830 (1989), providing for the recognition and enforcement of the custody judgments of foreign nations). Therefore, the trial court had subject matter jurisdiction to make the initial custody determination under ORS 109.730(1)(d) (1997). The same conclusion follows with respect to the orders modifying the parenting plan that the trial court entered under the UCCJA in October 1998 and April 1999.

■  However, we conclude that the trial court did not have jurisdiction to decide the portions of father's current motion and order to show cause seeking to modify the custody determination and the parenting plan under the UCCJEA, the law in effect when that motion was filed. A controlling provision of that Act, ORS 109.744, provides:

> "(1)  Except as otherwise provided in ORS 109.751, a court of this state that has made a child custody determination consistent with ORS 109.741 or ORS 109.747 has exclusive, continuing jurisdiction over the determination until:

"(a) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; or

"(b) A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

"(2) A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if the court has jurisdiction to make an initial determination under ORS 109.741."

ORS 109.744(1)(a) makes clear that an Oregon court does not have *exclusive* jurisdiction over a custody determination where the child lacks a significant connection with this state and substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in this state. In its order of dismissal, the trial court found that the children have never resided in Oregon and that all of the witnesses with information concerning the children's welfare resided in Germany. Further, in its order denying reconsideration, the trial court stated that it did not have exclusive continuing jurisdiction under ORS 109.744(1)(a), a conclusion that depended on the court having found that the children did not have a significant connection to this state *and* that substantial evidence concerning their welfare was not available here. Father does not challenge those findings, and our review of the record discloses that they are beyond reasonable dispute.

The dissent disagrees, asserting that Oregon holds exclusive jurisdiction over the custody determination. The dissent apparently believes that it is possible for Oregon to retain *exclusive* continuing jurisdiction under ORS 109.744 and, at the same time, for Germany to have "home state" jurisdiction under ORS 109.741. 179 Or App at 657 (Edmonds, J., dissenting).[5] That conclusion is perplexing.

---

[5] The dissent contends that "Germany's authority to exercise 'home state' jurisdiction * * * does not deprive the trial court of the grant of 'exclusive, continuing

The word "exclusive" is not ambiguous. Its common meaning is "single, sole ‹an ~ agent› ‹~ jurisdiction›." *Webster's Third New Int'l Dictionary*, 793 (unabridged ed 1993). Nothing in the context of ORS 109.744 indicates a different meaning. Because Oregon's jurisdiction simply could not be *sole* if Germany could exercise "home state" jurisdiction, there is no ambiguity. Thus, the necessary implication of the dissent's view that Oregon retains exclusive jurisdiction is that Germany—the children's lifelong home—lacks any jurisdiction at all. As the dissent agrees, the UCCJEA expressly prefers jurisdiction to be exercised in a child's "home state." 179 Or App at 655-56 (Edmonds, J., dissenting); *see also* ORS 109.741(b), (c), and (d) (deferring other types of jurisdiction in favor of courts with "home state" jurisdiction). The dissent's belief that Oregon's courts retain *exclusive* jurisdiction over the custody determination in this case necessarily contravenes that preference.

In aid of its conclusion that Oregon retains exclusive jurisdiction, the dissent relies on four factors—without differentiation—to support its assertions both that Oregon has a "significant connection" to the children and also that it harbors "substantial evidence" concerning their care, protection, training, and personal relationships. ORS 109.744(1)(a). The first factor is the time that the children spent in this state in 1998. That visit commenced in July and was to have been a five-week parenting time period. As noted, father kept the children in Oregon until September, when the trial court ordered their return to Germany. Apart from that period, the children have never been present in this state. Second, the dissent relies on father's residence in this state since 1997 and the presence of members of his family, including his

jurisdiction.' " 179 Or App at 657 (Edmonds, J., dissenting). In support of that proposition, the dissent cites the UCCJEA commentary and states that, "[e]ven if the child has acquired a new home State, the original decree State retains jurisdiction, so long as the general requisites of the 'substantial connection' jurisdiction provisions * * * are met." 179 Or App at 657 (Edmonds, J., dissenting) (quoting Uniform Child Custody Jurisdiction and Enforcement Act § 202 Comment, 9 ULA 649, 674 (1997)). That portion of the commentary in no way suggests that one state may have exclusive jurisdiction while another has home state jurisdiction. Nor is it in any respect inconsistent with our conclusion—elaborated below—that Oregon courts lack exclusive continuing jurisdiction over the custody determination under ORS 109.744(1)(a) because "substantial connection" jurisdiction does not exist in this state.

present wife, in this state. Third, the dissent relies on one—or perhaps, two—psychological evaluations of the children performed in Oregon in 1998. Fourth, the dissent points to a court-ordered custody evaluation performed in 1998.[6] The dissent's argument thus boils down to an assertion of exclusive Oregon jurisdiction based on the presence of father, his wife, and parents in this state, and events occurring in 1998, consisting of the children's visit and evidence that apparently was obtained during that visit.[7] However, the visit and evidence derived from it constitute limited contacts, rather than significant connections, between the children and this state. Those contacts, coupled with father's and his family's presence in Oregon, are not the sort of "maximum rather than minimum contact[s]" that may confer exclusive jurisdiction on the courts of this state. *See, e.g., Stubbs v. Weathersby*, 320 Or 620, 627-28 n 4, 892 P2d 991 (1995) (holding, under similar UCCJA requirement, that "significant connection" jurisdiction requires "maximum rather than minimum contact with the state," and that a child's short-term physical presence is not enough to establish such jurisdiction); *State ex rel State of Washington v. Bue*, 117 Or App 477, 480-81, 844 P2d 278 (1992) (holding, under similar UCCJA requirement, that children did not have a significant connection to Oregon where their only connections consisted of "the fact that father and other family relatives live in Oregon and that the children make occasional visits to Oregon with their mother").

Even if that were not so, the trial court would not have exclusive continuing jurisdiction under ORS 109.744(1)(a), the applicable provision of the UCCJEA, unless substantial evidence concerning the children's care, protection, training, and personal relationships *also* existed in Oregon. The dissent asserts that the testimony of father and his family members constitutes such evidence, together

---

[6] In a letter written to the German court, father explained:

"A custody hearing was held in September 1998. It was determined by a custody evaluator that there was not enough physical evidence to warrant a modification of custody."

[7] The dissent also mentions in passing the existence of Oregon court records relating to prior custody and parenting time proceedings. However, properly authenticated copies of those records are available for use in any jurisdiction—including Germany—where their legal effect may be recognized.

with the 1998 evaluations. We disagree. "[T]he requirement
of the availability of 'substantial evidence' should be under-
stood to require optimum access to relevant evidence." *Settle
and Settle*, 276 Or 759, 767, 556 P2d 962 (1976).[8] The frag-
mentary assortment of information upon which the dissent
relies does not nearly approach the optimal mass of substan-
tial evidence that is required for the assertion of exclusive
continuing jurisdiction. The children were present in Oregon
for less than four months—but they lived in Germany for 14
and 12 *years*, respectively. Evidence of the vast majority of
their care, protection, training, and personal relationships—
past, present *and* future—necessarily is situated in
Germany. The minimal quantity of Oregon contacts cited by
the dissent cannot be understood to create more than negli-
gible relevant evidence to which Oregon could provide "opti-
mum access." *See Efaw*, 117 Or App at 480-81 (holding that,
despite residence of father and other family members in
Oregon, there was "no indication that substantial evidence
* * * is available in Oregon"). In its order denying reconsid-
eration, the trial court necessarily found—and we agree—
that substantial evidence concerning the children's care, pro-
tection, training, and personal relationships does not exist in
this state. Like the absence of significant connections, that
finding provides an independent basis divesting Oregon of
exclusive jurisdiction. ORS 109.744(1).[9]

It follows that the trial court lacked continuing juris-
diction to modify the custody determination unless, in
December 1999, it would have had jurisdiction to make an
initial custody determination under ORS 109.741. *See* ORS
109.744(2). ORS 109.741 provides:

---

[8] Although *Settle* construed the term "substantial evidence" under the UCCJA,
drafters of the UCCJEA and the Oregon Legislature imported the term without
modification. Nothing in the UCCJEA indicates an intent to modify the meaning of
that term.

[9] Focusing on the first sentence of ORS 109.744(1), the dissent strives at length
to establish that the initial custody determination was "consistent with ORS
109.741." However, a resolution of that issue—and the purported statutory ambi-
guity into which the dissent delves—is unnecessary. If the dissent is correct, for the
reasons that we have explained Oregon nonetheless lacked *continuing* exclusive
jurisdiction under ORS 109.744(1)(a) to make a *further* custody determination in
the present proceeding. If the dissent were wrong, ORS 109.744 could not under
any circumstances provide a basis for continuing exclusive jurisdiction over the
children's custody determination.

"(1) Except as otherwise provided in ORS 109.751 [providing for temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:

"(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(b) A court of another state does not have jurisdiction under subsection (1)(a) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under ORS 109.761 [inconvenient forum] or 109.764 [jurisdiction declined by reason of conduct], and:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

"(c) All courts having jurisdiction under subsection (1)(a) or (b) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under ORS 109.761 or 109.764; or

"(d) No court of any other state would have jurisdiction under the criteria specified in subsection (1)(a), (b) or (c) of this section.

"(2) Subsection (1) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

"(3) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a custody determination."

We examine, in turn, each of the four possible grounds for asserting initial custody jurisdiction under ORS 109.741(1). Subsection (1)(a) is plainly inapplicable, because

Oregon was not the children's home state at any time. *See* ORS 109.704(7) (defining "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding").

Subsections (1)(b) and (c) also would have been inapplicable because of a fundamental change in the definition of "state" under the UCCJEA. Unlike the UCCJA, the UCCJEA requires Oregon courts to "treat a foreign country as if it were a state of the United States for the purpose of applying ORS 109.701 to 109.771." ORS 109.714(1). As a consequence, Germany is the children's "home state," and the trial court could not have asserted jurisdiction under either subsection (1)(b) or (c) unless the German court had declined jurisdiction on the ground that it was an inconvenient forum, ORS 109.761, or because mother had engaged in unjustifiable conduct, ORS 109.764. Neither reason was cited here. The German court deferred to the trial court because that court had made an initial custody determination under substantive legal principles that the German court believed were compatible with German law and because mother had consented to the trial court's exercise of jurisdiction over the initial custody determination. Because the German court did not decline to exercise jurisdiction on the grounds specified in either ORS 109.761 or ORS 109.764, the trial court would not have had jurisdiction to make an initial custody determination under ORS 109.741(1)(b) or (c).

Finally, the trial court also would have lacked jurisdiction under subsection (1)(d), because Germany was the children's "home state" under subsection (1)(a).

In short, the trial court could not—at the time it decided father's motion and order to show cause—have exercised jurisdiction to make an initial custody determination under any paragraph of ORS 109.741(1), that is, under the UCCJEA. As a consequence, the trial court lacked jurisdiction under the UCCJEA to modify the custody determinations it had made under the UCCJA. ORS 109.744(2).

For two reasons, the German court's rationale for declining to exercise jurisdiction does not affect our conclusion. First, although the compatibility of German law and

Oregon law sensibly could influence the German court's willingness to recognize the effect of the trial court's initial custody determination, it cannot override the statutory limitations on the trial court's jurisdiction to modify that determination.[10] Second, mother's consent to the trial court's jurisdiction over the initial determination would have had no effect if, indeed, the court had lacked jurisdiction to make that determination. *See Chester*, 172 Or App at 469 (holding that subject matter jurisdiction over child custody determinations cannot be conferred by consent, nor can the want of subject matter jurisdiction be remedied by waiver or estoppel).[11]

To summarize, although the trial court had jurisdiction under the UCCJA to make its earlier custody and parenting time determinations, it did not have jurisdiction under the UCCJEA to modify the custody determination and parenting plan. Therefore, the court properly dismissed *sua sponte* the portion of father's motion and order to show cause that sought to modify the custody determination and the parenting plan and, likewise, did not err in denying father's motion to reconsider that dismissal.[12] *See Rauda v. Oregon Roses, Inc.*, 329 Or 265, 268, 986 P2d 1157 (1999) (holding that a court must examine jurisdictional issues anew regardless of whether the parties have fully considered them).

■ However, that conclusion does not end our analysis, because father's motion and order to show cause sought relief beyond a change of custody or modification of the parenting

---

[10] Perhaps recognizing that fact, the dissent asserts that the German court declined jurisdiction on the ground that it was an inconvenient forum. 179 Or App at 662-63 (Edmonds, J., dissenting). With respect, the record does not support that view. There is no indication that the German court considered the factors relevant to an inconvenient forum determination. Such an inquiry—for purposes of ORS 109.761—would involve consideration of, for example, the nature and location of the evidence required to resolve the pending litigation, including the testimony of the children. ORS 109.761(2)(g). There is simply no evidence that the German court concluded that it was an inconvenient forum in which to litigate a custody determination involving children who had lived in Germany for their entire lives.

[11] In any event, mother has not consented to the trial court's exercise of jurisdiction in the present proceeding.

[12] Of course, the German court is free to reconsider its jurisdictional determination in light of our conclusion. Unless and until it does so, the dissent's suggestion that we—or, more properly, the legislature—have offered an "unfortunate result" to the parties is, at the least, premature.

plan. Father also requested termination, modification, or suspension of his child support obligations and various contempt sanctions for alleged violations of the parenting plan, including recovery of expenses and attorney fees. We must analyze those requests for relief separately.

■    The UCCJEA's jurisdictional primacy applies to "child custody determination[s]." ORS 109.741(2). By definition, a " '[c]hild custody determination' does not include an order relating to child support or other monetary obligation[s] of an individual." ORS 109.704(3). The UCCJEA thus did not deprive the court of jurisdiction to terminate, modify, or suspend that provision of the dissolution judgment. *See* ORS 110.327(1)(a) (a tribunal of this state issuing a support order consistent with the laws of this state has continuing jurisdiction over the support order, as long as this state remains the residence of the obligor). Therefore, the trial court erred in dismissing father's motions to terminate, modify, or suspend his child support obligation.

■    The trial court's jurisdiction to hold mother in contempt for violations of the current parenting plan and to impose sanctions for those violations presents different issues. The UCCJEA does not expressly address the enforcement of a custody determination made, as here, by a court of a state that no longer has jurisdiction to modify that determination under ORS 109.744(2). However, UCCJEA does contain extensive provisions concerning the enforcement of child custody determinations made by another state. *See* ORS 109.774 to ORS 109.827. The statutory definition of "child custody proceeding" specifically excludes "enforcement under ORS 109.774 to 109.827." ORS 109.704(4). That definition suggests that a child custody determination does not include an order *enforcing* an existing custody determination. That interpretation is bolstered by ORS 109.704(3), which provides that a " '[c]hild custody determination' means a judgment, decree or other order of a court *providing* for the legal custody, physical custody, parenting time or visitation with respect to a child." (Emphasis added.) That definition logically excludes a contempt judgment that does not *provide* for custody or parenting time but, rather, merely *enforces* an existing custody determination. Such a conclusion is unsurprising, because the trial court's loss of jurisdiction to modify

the existing custody determination does not, by force of logic, render that determination unenforceable. If it did, the German court's failure to exercise jurisdiction could leave the parties with *no* enforceable custody determination, a result that would serve no purpose of the UCCJEA.[13]

It follows that, unless and until a further custody determination is made by a court having jurisdiction to modify the custody determination, the trial court has authority to enforce by contempt proceedings the only custody determination and parenting plan that currently exists. *See* ORS 33.015(2)(b) (providing that contempt of court includes willfull "[d]isobedience of, resistance to or obstruction of the court's * * * orders or judgments"); ORS 33.025 (the power to impose sanctions for contempt of court "is an inherent judicial power"). Accordingly, the trial court erred in dismissing for lack of subject matter jurisdiction the portions of father's motion and order to show cause that sought to hold mother in contempt for violations of the existing custody determination and parenting plan and to impose contempt sanctions. Nothing we have said should be understood to suggest that the trial court is authorized to impose additional or different parenting time or a change of custody as a sanction for contempt. The judgment imposing any such sanction would constitute a child custody determination, because it would be a judgment *providing for* the legal custody, physical custody, parenting time, or visitation with respect to the parties' children. ORS 109.704(3). Such a judgment would improperly modify the existing custody determination when the court lacked jurisdiction to do so. *See* ORS 109.704(11) (" 'Modification' means a child custody determination * * * made after a previous determination concerning the same child * * *.").

Reversed and remanded with respect to portions of father's motion and order to show cause seeking termination,

---

[13] Our conclusion is consistent with ORS 109.717, which provides:

"A child custody determination made by a court of this state that has jurisdiction under ORS 109.701 to 109.834 *binds* all persons who have been served in accordance with the laws of this state or notified in accordance with ORS 109.724 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. *As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified.*" (Emphasis added.)

modification, or suspension of father's child support obligation and judgment of contempt, including contempt sanctions; otherwise affirmed.

**EDMONDS, J.,** dissenting.

Even though father remains a resident of the State of Oregon and ORS 107.135 provides Oregon courts with continuing subject matter jurisdiction over Oregon's dissolution of marriage judgments, the majority interprets ORS 109.744 to preclude the trial court's exercise of jurisdiction over father's motion to modify.[1] I dissent because the majority's interpretation is contrary to the legislature's intent as to how the statute should operate.

In May 1998, father filed a petition for dissolution of the parties' marriage in Clackamas County, and mother consented to the Oregon court's jurisdiction. Pursuant to that jurisdiction, the trial court dissolved the parties' marriage, awarded custody of the children to mother, and put a parenting plan in place. The trial court exercised its jurisdiction again in April 1999 when the parenting plan was modified at the request of the parties.

Then, in early October 1999, mother asked a German court to assume jurisdiction. In December 1999, father filed new motions regarding modification of visitation in the trial court and also registered the equivalent of a "special appearance" in the German court for the sole purpose of contesting the German court's jurisdiction. A hearing occurred in the trial court in August 2000 on father's motion to modify.

On October 30, 2000, the German court declined jurisdiction. On November 15, 2000, the trial court ruled on father's motion to modify, while still unaware of the German court's decision to decline jurisdiction. It found that:

---

[1] ORS 109.701 through ORS 109.874 constitute the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA). They are a replacement for former statutes governing interstate child custody disputes. Those former statutes, found in *former* ORS 109.700 through ORS 109.930, *repealed by* Or Laws 1999, ch 649, § 55, were referred to as the UCCJA. The other relevant statutory scheme referred to in this opinion is the Parental Kidnaping Prevention Act (PKPA), 28 USC § 1738A (1994), which is federal legislation governing the unlawful removal of children from their custodial parents.

(a) Mother is a citizen and resident of Germany; (b) Germany is the children's home state; (c) the potential witnesses are in Germany; and (d) the German court was an available forum. The trial court therefore declined to exercise jurisdiction. Significantly, the court did not find that father had left Oregon, that the children no longer had a significant connection with the state, or that substantial evidence was no longer available in Oregon concerning their care.

Father subsequently received notice of the German court's decision and notified the trial court that it was the only available, remaining forum. Accordingly, father moved under ORCP 71 B(1)(b) to set aside the order of dismissal, arguing that there was newly discovered evidence (the German order of dismissal), which could not have been discovered but which now should be considered, and alternatively, that the court should withdraw its order under ORCP 71 B(1)(e) so as to provide a forum for the parties' present dispute.[2] The court denied the motion and ruled:

> "Under ORS 109.741, Oregon never had jurisdiction to make an 'initial child custody determination.' In order for Oregon to have 'continuing jurisdiction under ORS 109.744, the 'child custody determination' must have been made consistent with ORS 109.741. If it could somehow be said to have had initial jurisdiction, Oregon would have lost that jurisdiction pursuant to ORS 109.744(1)(a) by the time of this hearing."[3]

Father appealed originally from the judgment of dismissal, but later filed an amended notice of appeal, also

---

[2] ORCP 71 B provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 64 F; * * * (e) * * * it is no longer equitable that the judgment should have prospective application."

[3] The trial court also speculated that, while the German court might have declined jurisdiction over the claim in light of father's protests against Germany's assumption of jurisdiction, the German court would probably hear the matter if father asked it to do so. There is nothing in the German court's ruling to support that bald assertion. As is evident from the content of its ruling, the German court based its decision on principles of comity and the desire to have jurisdiction continue in the court of initial jurisdiction. *See* 179 Or App at 662-63 (Edmonds, J., dissenting).

appealing from the denial of his motion to set aside the judgment. Both questions are properly before us. This case presents a question of continuing jurisdiction under circumstances where the trial court had exclusive jurisdiction at the time of its initial determination and where the only other court that could have subsequently exercised jurisdiction has declined jurisdiction. Our standard of review in deciding father's motion to modify is *de novo* on the factual record before us. ORS 19.125(3); *Henry and Keppel*, 326 Or 166, 168, 951 P2d 135 (1997).

In general, jurisdiction as it applies to courts encompasses: (1) jurisdiction over the subject matter; (2) jurisdiction over the parties; and (3) the jurisdiction or power to render a particular judgment. *Landis v. City of Roseburg*, 243 Or 44, 49, 411 P2d 282 (1966). All three kinds of jurisdiction existed in the trial court in 1998. At that time, the trial court acquired personal and subject matter jurisdiction under ORS 107.105. Also, it had the power to render custody or parenting plan decisions under ORS 107.105. Because the trial court had complete jurisdiction over the matter, ORS 107.135 would ordinarily confer continuing personal and subject matter jurisdiction, as well as the power to modify its prior judgment. However, the legislature intended that the jurisdictional requirements of ORS chapter 109 supplement those of chapter 107. Thus, while a court might appear to have the power to modify its custody awards under ORS 107.135, it may be deprived of jurisdiction because of the operation of ORS chapter 109. *State ex rel Pennsylvania v. Stork*, 56 Or App 335, 340, 641 P2d 660, *rev den* 293 Or 190, 648 P2d 851 (1982). With that much of the majority opinion, I agree.

The difference between the majority opinion and my view exists because we hold different understandings of the legislature's intent when it enacted the UCCJEA in 1999. The UCCJEA provides the following means by which a court exercises jurisdiction in child custody matters: (1) it can take initial jurisdiction of child custody matters under ORS 109.741; (2) it can take jurisdiction to modify a determination made by another state under ORS 109.747; (3) it can take temporary emergency jurisdiction under ORS 109.751; and (4) it can exercise already-existing jurisdiction to modify a determination when there is a simultaneous proceeding to

enforce the determination in another state, under ORS 109.757. In addition, it can decline to exercise the jurisdiction that it has under the foregoing statutes on the ground that another state is the more appropriate forum under ORS 109.761. Operating within that statutory scheme, ORS 109.744 declares that a court of this state that has made a child custody determination consistent with the UCCJEA has exclusive, continuing jurisdiction until the court determines that certain statutory prerequisites exist to divest it of jurisdiction. In other words, ORS 109.744 is a statute that confers exclusive continuing jurisdiction on the court that initially exercises valid jurisdiction.

In this case, the trial court acquired initial jurisdiction in 1998. That exercise of jurisdiction was consistent with the UCCJA, which was in effect at the time. Father's motion to modify, filed in December 1989, implicates for the first time the provisions of the UCCJEA and ORS 109.744. ORS 109.744 provides:

"(1)   Except as otherwise provided in ORS 109.751, a court of this state that has made a child custody determination consistent with ORS 109.741 or 109.747 has exclusive, continuing jurisdiction over the determination until:

"(a)   A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; or

"(b)   A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

"(2)   A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if the court has jurisdiction to make an initial determination under ORS 109.741."

The majority concludes that exclusive continuing jurisdiction no longer exists in the trial court under ORS 109.744 because of the provisions of ORS 109.741 that are referred to in ORS 109.744. ORS 109.741 provides, in part:

"(1)  Except as otherwise provided in ORS 109.751, a court of this state has jurisdiction to make an initial child custody determination only if:

"(a)  This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(b)  A court of another state does not have jurisdiction under subsection (1)(a) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under ORS 109.761 or 109.764, and:

"(A)  The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"(B)  Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

"(c)  All courts having jurisdiction under subsection (1)(a) or (b) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under ORS 109.761 or 109.764; or

"(d)  No court of any other state would have jurisdiction under the criteria specified in subsection (1)(a), (b) or (c) of this section."

As I understand the majority's reasoning, it holds that the trial court does not have exclusive continuing jurisdiction under ORS 109.744 because the trial court would not have had jurisdiction under ORS 109.741, had ORS 109.741 been in effect in 1998. It interprets the language "a court of this state that had made a child custody determination consistent with ORS 109.741" in ORS 109.744 to require *compliance* with the requirements of ORS 109.741 before exclusive jurisdiction could continue in the trial court. However, when the trial court made its initial determination in 1998, it had jurisdiction under *former* ORS 109.730(1)(b) of the UCCJA

and, if *former* ORS 109.730 had not been replaced by ORS 109.741, jurisdiction to modify clearly would still continue.[4] The majority's interpretation of the "consistent with ORS 109.741" language in ORS 109.744 is the pivotal point from which its reasoning and its ultimate result proceed. The effect of its interpretation is to restrict exclusive continuing jurisdiction to cases in which the initial determination had as its basis one of the grounds for jurisdiction specified in ORS 109.741. Thus, the majority presumes that the legislature, by adopting the UCCJEA, intended to undo the grant of jurisdiction that the legislature had authorized courts to exercise under *former* ORS 109.730(1)(b), (c) or (d), and ORS 107.105.

The majority's interpretation is but one of two reasonable possibilities regarding the legislature's intent as demonstrated by the text and context of ORS 109.744. The word "consistent" connotes as being "marked by harmony, regularity, or steady continuity throughout; showing no significant change, unevenness, or contradiction," "marked by agreement and concord," and "coexisting and showing no noteworthy opposing, conflict, inharmonious, or contradictory qualities or trends." *Webster's Third New Int'l Dictionary*, 484 (unabridged ed 1993). In the context of ORS 109.744, the words "consistent with" suggest, in accordance with their ordinary meaning, that a child custody determination that is valid under the law in effect at the time it was made will be deemed "consistent with" ORS 109.741 *if it is not in conflict or inharmonious with* ORS 109.741. It is important to note that in ORS 109.744, the legislature did not use the phrase "a court of this state that made a child custody determination *under* ORS 109.741" or the phrase "a court of this state that made a child custody determination *in compliance* with ORS 109.741." Because the legislature chose

---

[4] *Former* ORS 109.730(1)(b) provided:

"(1) A Court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"* * * * *

"(b) It is in the best interests of the child that a court of this state assume jurisdiction because the child and the parents of the child, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationship."

to use the language "consistent with" when it could have used other language requiring adherence to the provisions of ORS 109.741, it follows that the legislature meant "consistent with" to mean something other than requiring that the initial determination has, as its basis, one of the grounds for jurisdiction under ORS 109.741.

There are other reasons why the majority's interpretation is not the only reasonable interpretation of ORS 109.744. ORS 109.741 was not in effect at the time that the court validly exercised jurisdiction under the UCCJA and ORS 107.105. ORS 107.135 provides continuing jurisdiction to modify determinations made under ORS 107.105. It follows from the majority's interpretations that in cases where a state validly assumed initial jurisdiction on the basis of *former* ORS 109.730(1)(b), (c) or (d), the legislature intended to divest that state of continuing jurisdiction by the enactment of the UCCJEA. That approach results in the anomaly that jurisdiction existed in 1998 in this case on the ground of a significant connection/substantial evidence under *former* ORS 109.730(1)(b), but ceased to exist by operation of law under ORS 109.744 by December 1999. That view of the law requires, in effect, an awkward, retroactive reevaluation of what was, concededly, valid jurisdiction, through the lens of a law not in effect at the time. It is at odds with common sense that the legislature would have intended that a court that has validly acquired initial jurisdiction to determine child custody and parenting plan issues will lose modification jurisdiction, not because of a change in the circumstances of the parties and the children, but because of a subsequent amendment to the law. In sum, it cannot be said, for all of those reasons, that the majority's interpretation of ORS 109.744 is the only reasonable one.

When a statute is susceptible to more than one reasonable interpretation, resort to legislative history is necessary. The legislative history shows that the legislature intended to adopt, almost verbatim, the uniform draft of the UCCJEA proposed by the National Conference of Commissioners on Uniform State Laws (NCCUSL). Thus, we are to rely on both the Oregon and the NCCUSL commentaries on the UCCJEA for guidance in interpretation. *See State ex rel Torres v. Mason,* 315 Or 386, 848 P2d 592 (1993) (relying on

the commentary to the UCCJA to interpret Oregon's version of the statute). Before 1999, the UCCJA governed interstate child custody disputes. It provided four grounds for jurisdiction over a custody dispute: (1) child's home state jurisdiction; (2) significant connection jurisdiction; (3) temporary emergency jurisdiction; and (4) default jurisdiction. As among those grounds, the law did not prioritize. A state could exercise jurisdiction after finding any one of the grounds to exist. At the same time, the PKPA also governed interstate child custody disputes. The two acts were supposed to work together to remove the incentive for noncustodial parents to remove their children to a new state in the hope of finding a forum that would grant a modification of custody. The PKPA provided several grounds for jurisdiction as well, but more importantly, it also provided "priority" to the child's home state. The PKPA contained its own, built-in tie-breaker system: if the home state wanted to exercise jurisdiction, it had the authority to do so to the exclusion of other states that might also have jurisdiction on other grounds.

The PKPA and the UCCJA often worked well together, resulting in a disincentive to remove children from their custodial parent in their home state. However, there were conflicts when a nonhome state tried to assume jurisdiction under the UCCJA but did not have jurisdiction under the PKPA. Accordingly, the Uniform Law Commission drafted and approved the UCCJEA in 1997 and began pushing for its uniform acceptance in 1998. The UCCJEA was a replacement only for the UCCJA. Its manifest, stated purpose is to resolve the conflicts created between the PKPA and the UCCJA. It did so in two ways.

First, the UCCJEA was designed to adopt the PKPA's home state preference.[5] Thus, in cases where the home state is known, and has expressed an interest in having jurisdiction, any nonhome state must defer to the home state. In a "clean slate" case, where no prior determination of custody has been made, the home state will win under both

---

[5] Nothing in the commentary to the UCCJEA shows an intent to substantively alter the overall goals of the UCCJA by changing the definition of "state" to include foreign nations.

the PKPA and the UCCJEA. That is the first of the two over-arching policy goals that the UCCJEA was intended to effectuate.

Second, and more importantly for this case, the UCCJEA conferred "exclusive, continuing jurisdiction" on the state that exercised initial jurisdiction. According to the legislative history, the phrase "exclusive, continuing jurisdiction" has a particular meaning. As explained by NCCUSL the phrase means:

> "[*i*]*f a state once takes jurisdiction over a child custody dispute, it retains jurisdiction so long as that state, by its own determination, maintains a significant connection with the disputants or until all disputants have moved away from that state.* In contrast, the UCCJA allows jurisdiction to shift if the initial ground for taking jurisdiction ceases to exist. Thus, if a state takes jurisdiction over a child custody dispute because that state is the home state of the child, and the child subsequently establishes a new home state, jurisdiction can shift to the new home state, even if one parent remains in the child's original home state. The UCCJEA would not allow the jurisdiction to shift in this fashion, keeping it in the original home state so long as the parent remains there." Uniform Child Custody Jurisdiction and Enforcement Act § 202 Comment, 9 ULA 649, 674 (1997) (emphasis added).[6]

Thus, "exclusive continuing, jurisdiction" as used in the UCCJEA, is a term of art that operates to confer exclusivity of jurisdiction on the state that first exercises jurisdiction on a valid basis. That state continues to have exclusive jurisdiction over competing jurisdictional claims under the UCCJEA, subject to the discretion to defer to another state. That means jurisdiction continues *even if* another state later gains home state status. The continuity of jurisdiction as a goal is intended by the UCCJEA to trump home state priority.[7]

---

[6] This explanation was before the Oregon Legislature when it adopted the UCCJEA. *See* Testimony, Senate Judiciary Committee, SB 789, April 8, 1999, Ex F (statement of Senator Kate Brown); Testimony, House Judiciary Committee, SB 789A, May 27, 1999, Ex 6.

[7] The majority says, "Oregon's jurisdiction simply could not be 'sole' if Germany could exercise 'home state' jurisdiction[.]" 179 Or App at 640. What the majority ignores, however, is that ORS 109.744 operates as a *conferral* of exclusive

As the above history makes clear, the changes to the UCCJA made by the UCCJEA were not intended to divest a state of jurisdiction if it had validly exercised its original jurisdiction. Instead, the legislature intended the antithesis: a state that validly exercised jurisdiction in a child custody dispute continues to have jurisdiction until one of the statutory criteria in ORS 109.744 for loss of jurisdiction is met. That understanding of the policy underlying the UCCJEA makes the answer in this case clear. The trial court has exclusive continuing jurisdiction under ORS 109.744 because its 1998 child custody determination was "consistent with" the goals of ORS 109.741. Germany's authority to exercise "home state" jurisdiction under ORS 109.741 does not deprive the trial court of the grant of "exclusive, continuing jurisdiction." Rather, ORS 109.744 is intended to honor that jurisdiction so long as the ground for initial jurisdiction is consistent with its purposes. As the commentary to the UCCJEA makes clear:

> "Even if the child has acquired a new home State, the original decree State retains exclusive continuing jurisdiction, so long as the general requisites of the 'substantial connection' jurisdiction provisions * * * are met." Uniform Child Custody Jurisdiction and Enforcement Act § 202 Comment, 9 ULA 649, 674 (1997).

Because the trial court has exclusive, continuing jurisdiction consistent with ORS 109.741, it could lose jurisdiction under ORS 109.744 only if it determined that neither the child, nor the child and one parent, nor the child and a person acting as a parent have any significant connection with the State of Oregon and that substantial evidence concerning the child's care, protection training and personal relationships is no longer available.[8]

---

jurisdiction on a court that validly exercises initial jurisdiction. Under the statute, the court does not reach its conclusion about the exclusivity of jurisdiction by determining whether another state might have jurisdiction. As the commentary states:

"The continuing jurisdiction of the original decree state *is exclusive.* * * * *This section makes the continuing jurisdiction of the original decree State exclusive* so long as the child, a parent, or person acting as a parent remains in the State and there is substantial evidence concerning the child's care, protection, training and personal relations." Uniform Child Custody Jurisdiction and Enforcement Act § 202 Comment, 9 ULA 649, 674 (1997). (Emphasis added.)

[8] The majority says, "the UCCJEA expressly prefers jurisdiction to be exercised in a child's 'home state.'" 179 Or App at 640. Also, it says that our

The majority also makes a factual determination under ORS 109.744 with which I disagree. The majority says:

"In its order of dismissal, the trial court found that the children have never resided in Oregon and that all of the witnesses with information concerning the children's welfare resided in Germany. Further, in its order denying reconsideration, the trial court stated that it did not have exclusive continuing jurisdiction under ORS 109.744(1)(a), a conclusion that depended on the court having found that the children did not have a significant connection to this state and that substantial evidence concerning their welfare was not available here. Father does not challenge those findings, and our review of the record discloses that they are beyond reasonable dispute." 179 Or App at 639.

The trial court's findings that mother is a citizen and resident of Germany, that Germany is the children's home state, and that many of the potential witnesses reside in Germany are not determinative of whether jurisdiction has been lost under ORS 109.744(1)(a). Father correctly urges that it does not follow from the fact that Germany is the home state of mother and the children and that potential witnesses also reside there that the children have no significant connection to Oregon. The majority's view of the evidence that is available to the trial court is myopic and contrary to the intent of the drafters of the UCCJEA.

The commentary to the UCCJEA states:

"The determination of significant connections has been changed [from the UCCJA] to eliminate the language of 'present or future care.' The jurisdictional determination [of whether a state has significant connection/substantial evidence jurisdiction] should be made by determining *whether there is sufficient evidence in the State for the court to make an informed custody determination.* That evidence might relate to the past as well as to the 'present or future.' " Uniform Child Custody Jurisdiction and Enforcement Act § 202 Comment, 9 ULA 649, 674 (1997) (emphasis added).

---

understanding would "necessarily contravene[ ] that preference." *Id.* As between the competing policies of continuity or home state jurisdiction, the UCCJEA chooses continuity as the higher priority. *See* Commentary quoted at 179 Or App at 656 (Edmonds, J., dissenting).

The record shows that the children lived in Oregon with father for four months while the parties were litigating their disputes. During that time, they were enrolled in school, creating the probability that records and contacts exist that comment on their welfare while residing with father. The record also shows that the children underwent psychological evaluations in August 1998 with Dr. Richard Lazere, an Oregon psychologist at the time. Those evaluations revealed significant information about their circumstances while under their mother's care. His report also contains relevant information about the children's expressed wishes regarding custody. Apparently, the children made drawings during the evaluations that demonstrate their perception of their custodial circumstances. In addition, there is evidence that the children were evaluated by another psychologist while in Oregon, when Dr. Lazere became unavailable.

The record also refers to a court-ordered custody evaluation regarding mother and father done in Oregon in 1998 by Jean Furchner. Furchner's testimony presumably has ongoing significance because it affords the court a more complete understanding of the history of the parties and their relationship in context with their subsequent conduct. The record also contains evidence showing that father's parents, who live in Oregon, have had multiple contacts with the children, both in Germany and during the children's stay in the United States. They wish to offer evidence regarding mother's deceptive conduct and attempts to prevent them from having contact with the children, as well as the parties' son's wishes regarding custody.

Father's current wife, a resident of Oregon, is the godmother of the parties' daughter and also has had substantial contacts with the children, including talking with them for lengthy periods of time by telephone. She has also known the entire family for a long time and appears to have been mother's best friend. Finally, there exists in this state the court record of an initial custody determination and a subsequent modification of that determination that are relevant to the determination of father's motion to modify. In sum, the majority is wrong when it argues that insufficient evidence

exists outside Germany relating to the parents and the children. There is a great deal of evidence available, and while an Oregon court could permissibly decline jurisdiction on this record, it cannot be held as a matter of law to have lost the jurisdiction that it acquired under ORS chapter 107.

The majority reasons from several non-UCCJEA cases that address the amount of evidence that should be present in order to conclude that "substantial evidence" exists. 179 Or App at 641-42. However, the commentary to the UCCJEA shows that jurisdiction is intended to continue until "the relationship between the child and the State with exclusive, continuing jurisdiction becomes *so attenuated* that the court could no longer find a significant connection or substantial evidence." Uniform Child Custody Jurisdiction and Enforcement Act § 202 Comment, 9 ULA 649, 674 (1997) (emphasis added). Also, the commentary states that "the jurisdictional determination should be made by determining whether there is *sufficient evidence* in the state for the court to make an informed custody determination." *Id*. (emphasis added).

I agree with the majority that the "physical presence" of the children for a three or four month period in Oregon is not enough by itself to establish a significant connection under ORS 109.744(1)(a). *See* ORS 109.741(3). However, the cases cited by the majority in support of its argument that jurisdiction was lost for lack of a significant connection are readily distinguishable from this case, where there are more connections to Oregon than the mere physical presence of one parent. In *Stubbs v. Weathersby*, 320 Or 620, 627 n 4, 892 P2d 991 (1995), the adoptive mother went to Washington from Oregon and brought an infant who had been born in Washington back to Oregon in November 1989. Then, she and her husband filed a petition for adoption on January 30, 1990, in Oregon. The birth mother was not a resident of Oregon, nor did she ever consent to the adoption proceedings in Oregon. In comparison, both father and mother consented to Oregon's jurisdiction in this case, there have been prior adjudications in the trial court, and there is available in Oregon substantial psychological information about the parents and the children. In *State ex rel State of Washington v. Bue*, 117 Or App 477, 480-81, 844 P2d 278

(1992), the issue was whether the children had a significant connection to the state for purposes of adjudicating visitation rights. The children, ages 9 and 12, lived their entire lives in Washington and had no connection with the state. Their father was an Oregon resident, but the children had had no contact with their father before the proceeding began, aside from a four-month relationship when the youngest child had been conceived.

Moreover, as a matter of statutory construction, the fact that the children have never resided in Oregon cannot be treated as a finding that they have no significant connection to the state. The "home state" statute, and the "significant connection" statute are separate grounds for jurisdiction under the UCCJEA, the UCCJA, and the PKPA. *Compare* ORS 109.741(1)(a) with (1)(b)(A): *See also former* ORS 109.730(1)(a) and (1)(b). Clearly, under either the UCCJEA or the UCCJA, a court can have jurisdiction over a child even when the court is not a court of the home state. It follows that the majority is in error when it conflates a finding that Germany is the children's home state with the statutory requisite that they have no significant connection to Oregon. In summary, ORS 109.744(1) confers exclusive, continuing jurisdiction on the trial court, and there is no basis from which to conclude that it has been lost.

The other alternative for loss of jurisdiction under ORS 109.744(1) is expressed in subsection (b) of the statute. It provides for a loss of jurisdiction when the child *and* the child's parents do not presently reside in the state. The short answer to an inquiry under ORS 109.744(1)(b) is that father presently resides in this state. Because of that fact and the significant connection of the children to this state and the substantial evidence available here, continuing jurisdiction has not been lost under either ORS 109.744(1)(a) or (1)(b). We have to go no further than ORS 109.744(1) to reach the conclusion that the trial court has exclusive, continuing jurisdiction, because its exercise of jurisdiction in 1998 was consistent with the goals of ORS 109.741.

Even if the analysis somehow reaches subsection (2) of ORS 109.744, it leads to a different result from the majority's conclusion. Subsection (2) requires the making of a new

jurisdictional determination under ORS 109.741 when there is no exclusive, continuing jurisdiction. The majority says that the only subsections of ORS 109.741 that could apply are sections (1)(b) or (1)(c), and that neither would give Oregon jurisdiction. It explains that

> "[because] Germany is the children's 'home state,' * * * the trial court could not have asserted jurisdiction under either subsection (1)(b) or (c) unless the German court had declined jurisdiction on the ground that it was an inconvenient forum, ORS 109.761, or because mother had engaged in unjustifiable conduct, ORS 109.764. Neither reason was cited here." 179 Or App at 644.

I disagree with the above conclusion because jurisdiction exists under ORS 109.741(1)(b). The German court order gave the following reasons for declining jurisdiction:

> "[I]n view of the previous proceeding regarding parental custody in the USA and in view of the pending custody proceeding in the Oregon Circuit Court, which can be recognized under German law, the [German Court] considers a custody decision to be impermissible."

The German court order constitutes, in substance, a decision to defer jurisdiction for the reason that ORS 109.761 envisions and that ORS 109.741(1)(b) contemplates. *See also* ORS 109.741(1)(c). The order, in the language of the statute, is a declaration that Germany "is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."[9] Because Germany, the children's home state, has declined jurisdiction on inconvenient forum grounds, and there exists a significant connection with this

---

[9] The majority says "the record does not support" the view that "the German court considered the factors relevant to an inconvenient forum determination." 179 Or App at 645 n 10. Those factors are found in ORS 109.761. The German court's deferral of jurisdiction shows that it considered: (1) the existence of the divorce decision in Clackamas County courts; (2) the children's visitations to the United States for longer than 2 weeks; (3) mother's travel to the United States in the past to participate in court decisions; (4) the pending proceedings in Oregon; (5) the fact that mother was given an opportunity to participate in the modification in the trial court; (6) the children's dual citizenship as both German and American citizens; (7) the breadth of the jurisdiction of the trial court; (8) principles of public policy; and (9) mother's agreement to have the divorce and prior modification done in Oregon. In my view, those considerations, listed by the German court in its written order, show the consideration of the very factors listed in ORS 109.761(2)(b), (e), (f), (g), and (h).

state and there is substantial evidence available here, jurisdiction also exists under ORS 109.741(1)(b). *See also* ORS 109.741(1)(c). It necessarily follows that the trial court also had jurisdiction to modify its original judgment under ORS 109.744(2), which authorizes a court to modify a judgment if "the court *has* jurisdiction to make an initial determination under ORS 109.741." (Emphasis added.)

There is one more policy factor that weighs in favor of interpreting ORS 109.744 to authorize jurisdiction in this case. The legislature was aware of ORS 107.135 when it enacted ORS 109.744(1). ORS 107.135 gives a court continuing jurisdiction once it has initially acted in a child custody case, and ORS 109.744 is intended to supplement the authority existing under ORS 107.135. Where there are several statutes that address the same subject, we are instructed by the legislature to construe them so as to give effect to all, if possible. ORS 174.010. The majority's interpretation of ORS 109.744(1) in this case trumps the continuation of jurisdiction that ORS 107.135 contemplates. However, if the words "continuing and exclusive jurisdiction consistent with ORS 107.741" in ORS 109.744 are understood to express an intention that an exercise of jurisdiction is valid if it honors the goals of ORS chapter 109, effect is given to ORS 107.135 as well as ORS 109.744(1).

The difference between my and the majority's interpretation of ORS 109.744 is significant to the outcome of this case. The practical effect of the majority's holding is that the trial court is precluded *as a matter of law* from exercising jurisdiction. That result violates the policy of the UCCJEA, which emphasizes the cooperative exercise of discretion by multiple state courts. As the statutes make clear, the courts are to be guided by the UCCJEA but are to exercise discretion based on the enumerated factors and to reach jurisdictional conclusions that are in the best interests of children. The trial court's decision not to exercise jurisdiction in this case is error because: (1) the trial court did not, and could not, on this record, make the findings that ORS 109.744(1) requires to divest itself of continuing jurisdiction; and (2) even if resort to ORS 109.744(2) occurs, two grounds for exercising initial child custody jurisdiction under ORS 109.741 existed in

November 2000, thus authorizing the court to modify the judgment even in the absence of continuing jurisdiction.[10]

The question becomes what should happen in light of our *de novo* standard of review. The German court has declined jurisdiction, and father correctly asserts that jurisdiction continues in the trial court. At this time, Oregon is the only state that has exercised initial jurisdiction, and it continues to have jurisdiction. Ultimately, what is at stake here is the best interests of the children. The overall purpose of the UCCJEA to afford one appropriate, available forum is contravened by majority's holding. The parties chose to litigate the issues in the dissolution of their marriage in the State of Oregon, whose laws afford continuing jurisdiction over custody and visitation issues. What an unfortunate result the majority offers to the parties because of their choice of Oregon as their initial forum, they are left in "legal limbo," without any available forum to litigate their current disputes. Courts exist to resolve disputes. The concept of jurisdiction is intended to facilitate the resolution of disputes by directing where they should be resolved. A ruling that results in no available forum for the parties frustrates the very purpose for which courts exist.

For all of the above reasons, I dissent.

Linder, J., joins in this dissent.

---

[10] The UCCJEA commentary makes clear that, if a court declines jurisdiction because it believes it is more properly vested in another court:

"The court may not simply dismiss the action. To do so would leave the case in limbo. Rather the court shall stay the case and direct the parties to file in the State that has been found to be the more convenient forum. The court is also authorized to impose any other conditions it considers appropriate. This might include the issuance of temporary custody orders during the time necessary to commence a proceeding in the designated State; dismissing the case if the custody proceeding is not commenced in the other State; resuming jurisdiction if a court of the other State refuses to take the case." Uniform Child Custody Jurisdiction and Enforcement Act § 207 Comment, 9 ULA 649, 683 (1997).